UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GAYLE GARDNER,<br>        Plaintiff, | |
| v. | Civil Action No. 1:09-cv-11806 (FDS) |
| SIMPSON FINANCING<br>LIMITED PARTNERSHIP, *et al.*,<br>        Defendants. | LEAD DOCKET |
| CRYSTAL CAISSIE,<br>        Plaintiff, | |
| v. | Civil Action No. 1:09-cv-11807 (FDS) |
| SIMPSON FINANCING<br>LIMITED PARTNERSHIP, *et al.*,<br>        Defendants. | |
| LOUISE FELTEAU,<br>        Plaintiff, | |
| v. | Civil Action No. 1:09-cv-11808 (FDS) |
| SIMPSON FINANCING<br>LIMITED PARTNERSHIP, *et al.*,<br>        Defendants. | |
| TANYA PULISCIANO,<br>        Plaintiff, | |
| v. | Civil Action No. 1:09-cv-11811 (FDS) |
| SIMPSON FINANCING<br>LIMITED PARTNERSHIP, *et al.*,<br>        Defendants. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT AS A MATTER OF LAW, OR,
IN THE ALTERNATIVE, FOR REMITTITUR OR NEW TRIAL**

# **TABLE OF CONTENTS**

I.     Introduction …………………………………………………………………...1

II.    Factual Basis …………………………………………………………………1

       A.  Plaintiffs failed to offer any evidence of a duty to pull back the mulch to a
           defined distance from Building. …………………………………………..2

       B.  Plaintiffs failed to offer any evidence of a breach of a duty to pull back the
           mulch to a defined distance from Building. ……………………………3

       C.  Plaintiffs failed to offer any evidence of a causal connection between the
           breach of a duty and the spread of the Fire. ……………………………3

       D.  Plaintiffs were erroneously permitted to introduce evidence of subsequent
           remedial measures. …………………………………………………………..3

       E.  Plaintiffs' theory of recovery in the Pretrial Memorandum differed
           significantly from their theory of recovery at trial. ……………………4

       F.  Plaintiffs were erroneously permitted to introduce evidence of medical
           conditions at trial without disclosing any medical documentation during
           discovery and despite the Court's specific Order to the contrary. ……………..5

       G.  Plaintiffs failed to offer any objective evidence to corroborate their
           emotional distress claims. …………………………………………………...5

       H.  Plaintiffs' emotional distress awards were excessive and punitive. …………...7

III.   Legal Argument ……………………………………………………………7

       A.  Judgment as a Matter of Law …………………………………………..7

           1.  Judgment as a matter of law should enter dismissing the complaint in
               its entirety because Plaintiffs failed to prove their claims for negligence
               or breach of the implied covenant of quiet enjoyment. ……………… 8

               a)  Plaintiffs failed to prove the existence of a duty to pull back the
                   mulch to a defined distance from the Building. ………………………..8

               b)  Plaintiffs failed to prove that the *alleged* breach of a duty to pull back
                   the mulch to a defined distance *caused* the Building to burn down. ….. 11

2. Judgment as a matter of law should enter vacating the emotional distress awards because Plaintiffs failed to corroborate their physical symptoms with objective evidence. …………………………………………………... 12

B. Remittitur or New Trial ……………………………………………………….. 14

1. Remittitur should be granted substantially reducing the emotional distress awards because they are punitive. …………………………………15

2. Remittitur should be granted substantially reducing the emotional distress awards because they are excessive and against the weight of the evidence. ………………………………………………………………… 15

3. A new trial should be granted because the verdict is against the weight of the evidence as it relates to liability and the emotional distress awards. ..16

4. A new trial should be granted because the "mulch pull back" theory was not disclosed in the Pretrial Memorandum and was unfairly presented at trial. …………………………………………………………...17

5. A new trial should be granted because the Court erroneously permitted Plaintiffs to introduce evidence of subsequent remedial measures. ………. 18

6. A new trial should be granted because the Court erroneously permitted Plaintiffs to prove their emotional distress with self-serving medical evidence testimony after Plaintiffs had failed to produce their medical records. …………………………………………………………………..18

7. Plaintiffs' emotional distress claims were improperly based on deceased pets. ………..…………………………………………………………… 19

IV. Conclusion ………………………………………………………………… 20

## I.   <u>Introduction</u>

Defendant Simpson Financing Limited Partnership ("SFLP") submits the following memorandum in support of its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b).  SFLP requests that the Court dismiss plaintiffs Gardner, Caissie, Felteau and Pulisciano's ("Plaintiffs") claims for negligence and breach of the implied covenant of quiet enjoyment because Plaintiffs failed to sustain their burden of proof at trial.  Even if these claims survive on liability, Plaintiffs' emotional distress damages should be vacated as a matter of law because they failed to corroborate with objective evidence the physical symptoms of their emotional distress.

In the alternative, SFLP requests that the Court grant a Remittitur or New Trial pursuant to Federal Rule of Civil Procedure 59 based upon, among other factors in addition to the above: (1) the unfair and surprising differences between Plaintiffs' theory of recovery in the Pretrial Memorandum and at trial; (2) the highly prejudicial admission of evidence of subsequent remedial measures; (3) the improper admission of medical evidence despite the Court's Order precluding such evidence in light of Plaintiffs' failure to produce any medical documentation during discovery; (4) the improper admission of emotional distress evidence based on the loss of pets despite the Court's Order precluding such evidence as provided under Massachusetts law; and (5) the excessive and punitive nature of the jury's emotional distress awards.

## II.   <u>Factual Basis</u>

SFLP is the owner of a residential apartment complex in Peabody, Massachusetts. Plaintiffs were residents of Building 8 ("the Building").  In late April or early May, 2008, a landscaping company installed mulch around the buildings.  On May 29, 2008, an accidental fire ("the Fire") destroyed the Building.  The Fire was caused by the careless disposal of a cigarette,

1

which started a fire in the mulch that then spread to the Building and was accelerated by a source

of natural gas.  Transcript ("Trans.") at 2-87.

### A. Plaintiffs failed to offer any evidence of a duty to pull back the mulch to a defined distance from Building.

Plaintiffs' theory of liability at trial for both of their legal claims involved SFLP's alleged

*duty* to pull back the mulch from the Building.  Plaintiffs did not, however, offer *any evidence* of

a *duty* to pull back the mulch, much less to a *defined distance*, from the Building in order to

prevent the Fire's spread from the mulch to the Building.  In that regard, it is determinative that

Plaintiffs failed to present any *expert evidence*, or evidence of an industry standard or custom,

relating to a general duty to pull back the mulch from the Building or a more specific duty to pull

back the mulch to a defined distance.

Plaintiffs' only evidence regarding a possible duty was the conflicting testimony of

Peabody Fire Department officials.  Inspector DiFranco testified, "I didn't tell them anything.  I

suggested to them that they should probably pull the mulch back, because the siding extended

down to the ground, that they should probably pull the mulch back from the siding if they were

going to be having these kinds of issues with fires in the mulch."  Trans. at 2-73; *contra* Trans. at

4-80.  However, Chief Padson was unequivocal in his testimony: "Peabody Fire did *not* issue any

order to remove the mulch from the property, that is correct."  Trans. at 2-97 (emphasis added).

Both Peabody Fire Department and SFLP's focus was on preventing the improper

disposal of cigarettes in the mulch.[1]  In fact, the Peabody Fire Department ordered SFLP to take

measures, which it immediately fulfilled, to prevent the improper disposal of cigarettes in the

---

[1] Inspector DiFranco testified that prior to the Fire there had been several smaller fires that had started as a result of the careless disposal of cigarettes in the mulch.  "It was, again, a -- you know, a fire in the mulch, mulch ignited by cigarettes, careless disposal of smoking materials."  Trans. at 2-75; Exhibit 17 at 3 (reporting the "careless disposal of smoking materials determined to be cause.  Mulch fire extinguished prior to arrival"); Exhibit 11 (noticing that the "[d]isposal of cigarette butts, ashes and matches in mulch beds is an unsafe condition likely to cause fire.").

mulch.  In short, Plaintiffs did not even attempt to establish facts upon which a legal duty to pull

back the mulch, much less a duty to pull back the mulch to a defined distance, could be found.

### B.  Plaintiffs failed to offer any evidence of a breach of a duty to pull back the mulch to a defined distance from Building.

Moreover, Plaintiffs failed to offer any evidence of a *breach* of this alleged duty.  Even

assuming, *arguendo*, that there was such a duty, the only admissible evidence germane to a

breach of duty came from Mr. Filippone, who testified that he did not know for a fact whether

the mulch had been pulled back from the Building.  Trans. at 2-57.

### C.  Plaintiffs failed to offer any evidence of a causal connection between the breach of a duty and the spread of the Fire.

Plaintiffs also failed to offer any evidence of a *causal connection* linking a breach of a

duty to the spread of the Fire from the mulch to the Building.  In that regard, Plaintiffs failed to

offer any *expert evidence* to prove that the proximity of the mulch to the Building caused the Fire

to spread, or that the Fire would not have spread to the Building and the gas lines if the mulch

*had* been pulled back.  Without establishing this *causal* nexus, Plaintiffs failed to sustain their

burden of proof.

The Court itself recognized the importance of *causation*.  The Court instructed the jury

that it needed to find that Plaintiffs had proven a duty *and* that a breach of that duty had *caused*

their injuries.  Trans. at 5-38 to 5-40.  Notably, the Court did not permit the jury to infer proof of

those elements from the mere occurrence of the Fire under the doctrine of res ipsa loquitur.

### D.  Plaintiffs were erroneously permitted to introduce evidence of subsequent remedial measures.

On cross-examination, immediately after a late-morning recess on the fourth day of trial,

Plaintiffs' counsel, despite an objection, was permitted to elicit testimony from SFLP, through

Ms. Jackson, regarding subsequent remedial measures that SFLP took with respect to the mulch.

Ms. Jackson was required to testify that after the Fire, SFLP had decided to pull back the mulch from its other buildings.  Trans. at 4-110.  The admission of evidence of subsequent remedial measures over SFLP's objection was in contravention of Federal Rule of Evidence 407.  Immediately after the improper admission of this evidence of subsequent remedial measures, the Court *sua sponte* cautioned the jury: "Obviously everyone is encouraged to make things safer after something happened, and you cannot use evidence that something was done after the fact to make something safer as proof it was safe before the incident happened."  Trans. at 4-110 to 4-111.  This curative instruction was insufficient to remedy the manifest prejudicial effect of this testimony.[2]

### E.  Plaintiffs' theory of recovery in the Pretrial Memorandum differed significantly from their theory of recovery at trial.

The *only* disputed issue of fact in this case, as *agreed* by the parties in their Pretrial Memorandum, was whether the mulch surrounding the Building was a highly flammable and unreasonably dangerous form of yard waste.  Indeed, Plaintiffs had, from the outset of the litigation and in their pretrial filings, advanced their claims as being based on the mulch being a defective product.  Plaintiffs' expert was expected to testify in support of that theory.  D.E. 116 at 13.  At trial, however, Plaintiffs did not call their expert and failed to introduce any evidence that the mulch was a dangerous and flammable form of yard waste.

---

[2] In an effort to mitigate the prejudicial effect of this improperly admitted evidence of subsequent remedial measures, SFLP re-called its Mr. Homan in order to rehabilitate Ms. Jackson's testimony.  Mr. Homan testified that after the Fire, SFLP consulted with the Fire Department and other city officials and only then did SFLP decide to pull back the mulch from its other buildings as a precautionary measure.  Trans. at 4-132 and 4-133.  During Mr. Homan's cross-examination, however, Plaintiffs' counsel incorrectly represented to the Court that *SFLP* had opened the doors to evidence of subsequent remedial measures.  Trans. at 4-138.  The Court accepted Plaintiffs' incorrect representation and erroneously permitted Plaintiffs to elicit more evidence of subsequent remedial measures from Mr. Homan.  Trans. at 141.  Mr. Homan's evidence regarding subsequent remedial measures was the final testimony the jury heard in this case.  Moreover, Plaintiffs' counsel relied on this improperly admitted evidence during his closing argument rebuttal, which was the final argument the jury heard in this case.  Trans. at 5-29.

Instead, on the second day of trial, Plaintiffs *changed* their theory of recovery from the one set forth in the Pretrial Memorandum (*i.e.*, that mulch was an inherently dangerous product) to the proposition that SFLP knew the mulch was too close to the Building and unreasonably failed to pull it back.  Trans. at 2-56.

> **F.  Plaintiffs were erroneously permitted to introduce evidence of medical conditions at trial without disclosing any medical documentation during discovery and despite the Court's specific Order to the contrary.**

During discovery, Plaintiffs, despite being requested to do so, did not produce *any* medical records after putting their physical and mental conditions at issue with their emotional distress claims.  As a result, the Court granted SFLP's motion *in limine* precluding Plaintiffs from offering any medical evidence at trial to support their emotional distress claims.  D.E. 135 at 5 ("SFLP requests that this Court enter an Order precluding the Plaintiffs in this consolidated action from offering any medical evidence as it relates to their emotional distress claims."); D.E. 141 (granting the motion).

Nevertheless, and despite SFLP's objections during the trial: plaintiff Gardner was permitted to testify that she sought counseling from a therapist, Trans. at 3-38 to 3-42; plaintiff Pulisciano was permitted to testify that she visited a doctor because of anxiety attacks, Trans. at 3-72; and plaintiff Fleteau was permitted to testify that she went to see a therapist to cope with her pain, Trans. at 4-33.

> **G.  Plaintiffs failed to offer any objective evidence to corroborate their emotional distress claims.**

None of the Plaintiffs offered any *objective* evidence to corroborate the physical symptoms of their emotional distress.  This is not a case where Plaintiffs' proximity to the fire validates their emotional distress claims.  None of the Plaintiffs *actually watched* from nearby as

the Building burned down.[3]    Rather, Plaintiffs' emotional distress claims were based upon the destruction of their personal property within their apartments.  Furthermore, the Court instructed the jury that the death of a pet *may not* be considered in the award of emotional distress damages. Trans. at 5-45.[4]

Plaintiff Gardner testified that she was in shock, started to drink, cried a lot, had a "meltdown" at Target and "flipped out" at K-Mart.  Trans. at 3-38 and 3-44 to 3-45.  In order to provide objective evidence to corroborate the physical symptoms of her emotional distress, Ms. Gardner could have called her therapist or any of the witnesses from Target or K-Mart to testify, but she did not.  Plaintiff Pulisciano testified that she felt ill, suffered from anxiety attacks and was depressed.  Trans. at 3-65 to 3-66 and 3-72.  In order to provide objective evidence to corroborate the physical symptoms of her emotional distress, Ms. Pulisciano could have called her doctor to testify or produced her medical records, but she did not.  Additionally, Ms. Pulisciano's alleged distress was, according to her testimony, as a result of her minor child's apparent distress.  Yet, she failed to introduce any objective evidence to corroborate what her son allegedly suffered.  Plaintiff Caissie testified that she was a "complete mess," felt faint and was vomiting, crying and screaming, but she would not allow any of the EMTs or fire officials to take her to the hospital.  Trans. at 3-81.  In order to provide objective evidence to corroborate the physical symptoms of her emotional distress, Ms. Caissie could have called any of the EMTs or fire officials to testify, but she did not.  Plaintiff Felteau testified that she was panicked,

---

[3] Plaintiff Gardner was the only plaintiff who saw the Fire at all, testifying that she arrived in the vicinity of the apartment complex nearly two hours after it began but was denied access and only able to see the Fire from a distant parking lot.  Trans. at 3-19 to 3-22.

[4] In fact, the Court had previously granted SFLP's motion *in limine* requesting "that this Court enter an Order precluding the Plaintiffs in this consolidated action from offering any evidence as it relates to their emotional distress claims occasioned by the loss of their pets."  D.E. 126 at 4; D.E. 141 (granting D.E. 126).  Nevertheless, Plaintiffs were permitted to testify at length about the emotional distress they suffered as a consequence of their pets' demise.  Trans. at 3-24, 3-37 to 3-38, 3-44, 3-67, 3-71, 3-79 to 3-83 and 4-26.

heartbroken, numb, shaking and crying.  Trans. at 4-28 to 4-30.  In order to provide objective evidence to corroborate the physical symptoms of her emotional distress, Ms. Felteau could have called her therapist or produced her therapy records, but she did not.

**H.  Plaintiffs' emotional distress awards were excessive and punitive.**

The Court instructed the jury that if it were to award emotional distress damages, it needed to do so based upon an individualized assessment of the "amount of money that you have determined would be a full, fair and reasonable compensation for the distress that you find that plaintiff endured as a result of witnessing the destruction of her home."  Trans. at 5-46 to 5-47.  The Court also instructed the jury that it was "*not* permitted to award any damages for the purpose of *punishing* the defendant or *to deter* other defendants from similar behavior."  Trans. at 5-47 (emphasis added).

After taking care to individually calculate and award compensatory damages ranging from $41,355.57 to $188,992.02 based upon the fair market value of Plaintiffs' lost property, the jury uniformly awarded $450,000 to each of them for their emotional distress.  D.E. 152 at 2-3.  However, emotional distress damages are, by their very nature, personalized and particularized claims.  Therefore, the fact that each of the Plaintiffs was swiftly awarded a uniform $450,000 without consideration of how the event emotionally affected them as individuals compels the conclusion that these awards were improper and excessive.

**III.   Legal Argument**

**A.  Judgment as a Matter of Law**

If the Court does not grant a motion for judgment as a matter of law at the close of the nonmoving party's case, then the moving party may file a renewed motion for judgment as a matter of law no later than 28 days after the entry of judgment.  Fed. R. Civ. P. 50(b).  A

renewed motion for judgment as a matter of law should be granted when, "after examining the evidence of record and drawing all reasonable inferences in favor of the nonmoving party, the record reveals no sufficient evidentiary basis for the verdict." *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 75 (1st Cir. 2001).  However, upon consideration of the motion, Plaintiffs are "not entitled to inferences based on speculation and conjecture." *Malone v. Lockheed Martin Corp.*, 610 F.3d 16, 20 (1st Cir. 2010).  *See also Muñiz-Olivari v. Stiefel Laboratories, Inc.* 496 F.3d 29, 35 (1st Cir. 2007) (stating that "the party bearing the ultimate burden of proof must have presented more than a 'mere scintilla of evidence' in his favor and cannot prevail if the jury's verdict rests on overly speculative or conjectural evidence.").

SFLP moved for judgment as a matter of law at the close of Plaintiffs' case and hereby renews its motion.  Trans. at 4-49 to 4-54.

**1.   Judgment as a matter of law should enter dismissing the complaint in its entirety because Plaintiffs failed to prove their claims for negligence or breach of the implied covenant of quiet enjoyment.**

The Court's instructions to the jury set forth the elements of Plaintiffs' claims for negligence and breach of the implied covenant of quiet enjoyment, including a specific instruction that "[t]he meaning of 'causation' for the breach of implied covenant claim is the same as for the negligence claim." Trans. at 5-42.  Accordingly, if Plaintiffs failed to prove the existence of a duty *or* of causation, then both of their legal claims must fail.  That is the situation here, as discussed below.

**a)   Plaintiffs failed to prove the existence of a duty to pull back the mulch to a defined distance from the Building.**

A landlord in control of a building must exercise reasonable care to keep it in a safe condition so that others will not be injured by fire or any other cause.  *See Ross v. Broitman*, 338 Mass. 770, 772-73 (1959); *Young v. Garwacki*, 380 Mass. 162, 164, 168-70 (1980) (declaring a

residential landlord owes a common-law duty to exercise reasonable care in maintaining the safety of the leased premises under the control of the tenant).  However, a specific duty of care requires a solid factual foundation.  A legal duty cannot be created out of thin air, and that is especially true for a specific duty to take actions to prevent the spread of a fire.  Further, a duty to prevent a fire is not created solely by a fire prevention statute restricting the proximity of flammable materials to a building or by anything the fire department may order in writing pursuant to such statute.  *Ross*, 338 Mass. at 773-74 (discussing Mass. G.L. c. 148 §§ 23-24).

*Expert testimony* was required to establish a duty of care in this case -- specifically, whether a potentially flammable substance (mulch) must be kept at a distance from a residential building, and if so, how far in order to prevent a potential fire from spreading.  *See Stewart v. Worcester Gas Light Co.*, 341 Mass. 425, 434-35 (1960).  In this case, Plaintiffs' trial theory was that SFLP had a duty to pull back the mulch from the Building.  Plaintiffs, therefore, had an obligation (which they failed to meet) to demonstrate by *expert evidence* both that the mulch should have been pulled back from the Building and how far the "pull back" should have been to prevent the Fire from spreading to the Building.[5]

The *Stewart* case confirms this conclusion.  In *Stewart*, there were multiple claims among the parties regarding a fire that was caused by natural gas spreading from an external source into a home after a contractor had damaged an underground service-pipe.  *Stewart*, 341 Mass. at 427-31.  The homeowners' claims against the gas company included a theory that the company had

---

[5] Massachusetts courts also require expert evidence to establish industry standards with respect to issues relating to landscaping because such issues are specialized matters and raise technical questions.  *Hallock v. Chatham Zoning Bd. of Appeals*, 2009 WL 4269936 *5 (Mass. Land Ct. November 30, 2009), *citing Barvenik v. Br. of Alderman of Newton*, 33 Mass. App. Ct. 129, 137 n.13 (1992) abrogated on other grounds by *Marashlian v. Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 724 (1996).

negligently installed *too close to the home* a dresser coupling[6] along the length of the service-pipe, and when the coupling separated, gas escaped into the home causing the fire. *Id.* at 434-35.

In requiring a new trial, the Supreme Judicial Court held that expert evidence was necessary to establish the industry standard for the distance between a potentially flammable source, like the dresser coupling, and a home because "[m]embers of a jury, as part of their ordinary experiences, *would have no basis without expert testimony* for determining whether this installation complied reasonably with proper standards of care." *Id.* at 435 (internal citations omitted and emphasis added). As the SJC stated, a factual witness's general testimony about how far the installation should have been from the home "was too inconclusive to afford a reasonable basis in such a technical matter for finding negligence in what was done. It left the jury to conjecture and surmise without adequately founded essential, expert guidance." *Id.* (internal citations omitted).

*Stewart* controls here. Expert evidence was required to establish whether there existed a duty to pull back the mulch, and if so, to what defined distance from the Building. *See id.* at 434-35. Just as in *Stewart*, without the *necessary expert evidence* to establish the industry standard, if any, for laying mulch a defined distance from a building, the members of the jury in this case, "as part of their ordinary experiences, [had] no basis … for determining whether this installation complied reasonably with proper standards of care." *Id.* at 435. Since there was no expert testimony at trial, the jury was left to "conjecture and surmise" and *improperly* returned a verdict based on nothing more than speculation. *See id.*

---

[6] "A dresser coupling is a fitting designed to join two pipes without threading." *Stewart*, 341 Mass. at 429 n.3.

**b)  Plaintiffs failed to prove that the *alleged* breach of a duty to pull back the mulch to a defined distance *caused* the Building to burn down.**

Expert testimony was also required to establish *the cause* of a fire that spread from its source to a particular building.  *Id.* at 434-35.  In other words, Plaintiffs needed to prove that *but for* SFLP's breach of this alleged duty, the Fire would *not* have spread to the Building.  If there is no evidence, as here, to warrant the finding of a *causal connection* between a particular condition on a defendant's property and the spread of a fire to an adjoining building, then a defendant may *not* be found liable for negligence.  *Little v. Lynn & Marblehead Real Estate Co.*, 301 Mass. 156, 159-60 (1938).[7]

Courts applying Massachusetts law have repeatedly held that a jury may not speculate on the cause of a fire.  *Enrich v. Windmere Corp.*, 416 Mass. 83, 88-89 (1993).[8]  Rather, with respect to accidental fires, a specific duty and *causation* must both be established by expert evidence.

Indeed, "[t]he presence of [a fire-causing condition] cannot be inferred in the absence of expert testimony."  *Enrich*, 416 Mass. at 87.  Numerous cases so hold.  *See, e.g., Triangle Dress, Inc. v. Bay State Serv., Inc.*, 356 Mass. 440, 441-42 (1969) ("The jury were thus left 'to conjecture and surmise' about the cause of the fire, 'without adequately founded … essential,

---

[7] The *Little* case illustrates the point.  There, the plaintiff brought a negligence claim alleging liability for damages resulting from a fire that began in the defendant's building and spread to the plaintiff's adjoining building.  *Little*, 301 Mass. at 157-58.  In affirming the trial court's directed verdict for the defendant, the SJC held that the defendant could not be found liable where there was no evidence that a specific condition on the defendant's property had *caused* the fire to spread to an adjoining building.  *Id.* at 159-60.

[8] In *Enrich*, the plaintiff brought a negligence claim for a fire that officials testified was caused by an electric fan.  *Enrich*, 416 Mass. at 85.  However, those officials also testified that they did not test the house wiring, fuse box, or any other electrical devices in the room where the fire began.  *Id.*  So while the evidence may have warranted the conclusion that the fan was the source of the fire, there was no specific evidence that a particular defect in the fan caused the fire, and "[l]acking expert testimony, other possible causes of the fire were not sufficiently eliminated." *Id.* at 87.  In affirming the trial court's motion for directed verdict, the SJC held that "[t]he jury would not be warranted in finding that it was more probable that the fire occurred because of a defect in the fan instead of some other cause for which the defendant is not responsible.  A verdict for the plaintiff here would, therefore, be based on speculation and conjecture."  *Id.*

expert guidance.'"); *United Serv. Auto. Ass'n v. Hope*, 61 Mass. App. Ct. 1102 (2004) (citing

*Enrich* for the proposition that "causation of a fire is not susceptible of proof by application of

the principle of res ipsa loquitur"); *A. Shapiro Realty Corp. v. Burgess Bros., Inc.*, 491 F.2d 327,

331 (1st Cir. 1974) ("outbreak of a fire is not evidence of negligence on the part of owner of

premises").

Here, Plaintiffs were *required* to offer expert evidence to prove the existence of a duty

and causation.  Yet they offered expert evidence on *neither* of these issues, leaving the jury to

speculate as to these critical elements.  Therefore, Plaintiffs claims must be dismissed because as

a matter of law they were not proven at trial.

>    **2.  Judgment as a matter of law should enter vacating the emotional distress
>         awards because Plaintiffs failed to corroborate their physical symptoms with
>         objective evidence.**

A successful claim for emotional distress requires more than a party's own self-serving

testimony of being upset, dismayed, humiliated and angry.  *See Sullivan v. Boston Gas Co.*, 414

Mass. 129, 137 (1993).  Rather, "plaintiffs must provide an 'objective corroboration of the

emotional distress alleged.'"  *Sullivan*, 414 Mass. at 137, *citing Peyton v. Abbott Labs*, 386 Mass.

540, 547 (1982).

Expert medical testimony may be the kind of objective evidence that is required to make

such a showing, "keeping in mind the over-all goal is to determine whether the evidence

sufficiently corroborates the plaintiff's claim of mental distress and to strike a wise balance

between the fear of fraudulent claims and the danger that worthy claims will not be heard."

*Sullivan*, 414 Mass. at 138; *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 411-13 (2002)

(affirming *Sullivan*).

Other forms of third-party corroboration are also permitted.  *See, e.g., O'Neil v. DaimlerChrysler Corp.*, 538 F.Supp.2d 304, 321 (2008) (objective corroboration of physical symptoms provided by non-medical third-party witnesses); *Rodriguez v. Cambridge Hous. Auth.*, 443 Mass. 697, 704-05 & n.8 (2005) (objective corroboration of physical symptoms provided by medical records and testimony from physician); *Bresnahan v. McAuliffe*, 47 Mass. App. Ct. 278, 285 (1999) (objective corroboration of physical symptoms provided by affidavits from nurses). Furthermore, according to the *Sullivan* Court, evidence that the plaintiffs in that case had actually "looked on from across the street as their home burned to the ground" was the kind of event that *might* be sufficient, in and of itself, to corroborate the physical manifestations of a plaintiff's alleged emotional distress.  *Sullivan*, 414 Mass. at 130, 140.

Based on Plaintiffs' testimony, there was an abundance of available objective third-party evidence -- medical and non-medical witnesses, medical records and documentation.  However, in light of Plaintiffs' failure to produce *any* medical documentation during discovery and the Court's preclusive Order regarding the same, *none* of the Plaintiffs introduced *any* of this objective third-party evidence to corroborate the alleged physical symptoms of their emotional distress.  Moreover, none of the Plaintiffs actually watched the Fire from across the street.  In fact, only one of the Plaintiffs saw the Fire at all and then only from afar and long after it began. Plaintiffs were thus also unable to offer the kind of objective evidence that might have been sufficient, in and of itself, to corroborate the physical symptoms of their emotional distress.

This complete absence of objective evidence creates the precise danger the SJC has warned about: namely, that exaggerated claims will be supported by nothing more than a party's self-serving testimony.  *See Sullivan*, 414 Mass. at 138.  Therefore, Plaintiffs' emotional distress

damages must be vacated as a matter of law because none of them offered any objective evidence to corroborate the physical symptoms of their emotional distress.

### B.  Remittitur or New Trial

"A renewed motion for judgment as a matter of law … may include an alternative request for a new trial under Rule 59."  Fed. R. Civ. P. 50(b).  The Court may grant a new trial when the "outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice."  *Goulet v. New Penn Motor Express, Inc.*, 512 F. 3d 34, 44 (1st Cir. 2008) (quoting *Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 731 (1st Cir. 1999).

"Under the doctrine of remittitur, a court may condition the need for a new trial on the issue of damages on the prevailing party's acceptance of a reduced sum of damages."  *Cahill v. TIG Premier Ins. Co.*, 47 F.Supp.2d 87, 89 (D.Mass. 1999); *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 34-36 (1st Cir. 1999) (conditioning the need for a new trial on the acceptance of a reduced emotional distress award).  Accordingly, the Court may grant a motion for a new trial or remittitur if the award:

> exceeds any rational appraisal or estimate of the damages that
> could be based on the evidence before the jury and is grossly
> excessive, inordinate, shocking to the conscience of the court, or so
> high that it would be a denial of justice to permit it to stand.

*Franceschi v. Hosp. Gen. San Carlos, Inc.*, 420 F.3d 1, 5 (1st Cir. 2005) (internal indicators and citations omitted) (reducing emotional distress damages from $200,000 to $10,000).

In the event the Court does not grant judgment as a matter of law or vacate the emotional distress damages in their entirety, SFLP requests that the Court either grant a remittitur on the emotional distress damages or a new trial.  The compounding prejudicial effect of a variety of errors, including the improper admission of evidence of subsequent remedial measures, medical evidence despite the Court's Order to the contrary, and reliance on the death of pets to support

Plaintiffs' claims for emotional distress despite the Court's Order to the contrary, compel that

SFLP, at a minimum, be granted a new trial.

### 1. Remittitur should be granted substantially reducing the emotional distress awards because they are punitive.

"The purpose of punitive damages is not to compensate the plaintiff but to punish the

defendant … and thereby to discourage the defendant … from acting in a similar way in the

future." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492-93 (2008).  Moreover, "emotional

distress damages should not be improperly considered, or awarded, as a substitute for punitive

damages." *Stonehill College v. Mass. Comm'n Against Discrimination*, 441 Mass. 549, 575-76

(2004).  Rather, emotional distress awards are case specific and "when made, should be fair and

reasonable, and proportionate to the distress suffered." *Id.* at 576.

Here, the jury was specifically instructed *not* to award punitive damages and only to

calculate emotional distress damages, if any, based upon Plaintiffs' individual circumstances.

However, it is obvious from the nature of the jury's uniform $450,000 emotional distress awards

that it did not consider Plaintiffs' individual circumstances and instead sought to punish SFLP.

### 2. Remittitur should be granted substantially reducing the emotional distress awards because they are excessive and against the weight of the evidence.

Among the factors that should be considered when reviewing Plaintiffs' emotional

distress awards is the absence of expert evidence.  *Koster*, 181 F.3d at 35 ("Although testimony

from a mental health expert is not required to sustain an award for emotional distress, the

absence of such evidence is useful in comparing the injury to the award of damages.").  *See also*

*Sanchez v. Puerto Rico Oil Co*., 37 F.3d 712, 724 n.13 (1st Cir. 1994) (reducing a jury's

emotional distress award from $150,000 to $37,500 in the absence of expert testimony); *Soto-*

*Lebron v. Fed. Express Corp*., 538 F.3d 45, 69 (1st Cir. 2008) (finding a $1,800,000 emotional

distress award to be "shockingly exorbitant" and ordering a new trial where the "evidence did

not include any expert psychological testimony and did not come close to establishing that he

was disabled by his emotional injury."); *Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 823-26

(remanding for remittitur a grossly excessive $550,000 emotional distress award where the

plaintiff suffered from depression and sought counseling but had not been hospitalized or taken

medicine).

 None of the Plaintiffs supported their emotional distress claims with any expert or

corroborative evidence, and while their physical symptoms were generally analogous to

depression, there was no evidence that any of them were prescribed medicine or hospitalized.

Additionally, it was clear that Plaintiffs' emotional distress claims were largely based on the loss

of their pets.  However, not only does Massachusetts law prohibit an award for emotional

distress as a consequence of losing a pet, but this Court had previously precluded the

introduction of such evidence and instructed the jury not to award damages for emotional distress

as a result of a pet's death.

 **3. A new trial should be granted because the verdict is against the weight of the
evidence as it relates to liability and the emotional distress awards.**

 Allowing the verdict to stand in this case would result in a miscarriage of justice because

the weight of the evidence does not support a finding of liability on the common elements of

Plaintiffs' claims.  Plaintiffs failed to establish a duty to pull back the mulch to a defined distance

from the Building, or a breach of that duty, and they offered no evidence of causation.  The only

conclusion that can be drawn from the jury's verdict is that the jury impermissibly relied on

speculation and conjecture to infer that SFLP was negligent.  Moreover, the weight of the

evidence does not support the jury's emotional distress awards.  The awards are grossly

excessive in relation to the evidence, which did not include *any* expert *or* medical evidence.

### 4. A new trial should be granted because the "mulch pull back" theory was not disclosed in the Pretrial Memorandum and was unfairly presented at trial.

"A pretrial order is 'designed to define, simplify, and limit the issues to be decided, reduce error, prevent surprise, promote judicial economy, and encourage settlement,' primarily through admissions or stipulations by counsel, which are binding on the parties." *Weber v. Coast to Coast Med., Inc.*, 83 Mass. App. Ct. 478, 478-79 (2013) (internal citations omitted).

Based upon the parties' Pretrial Memorandum, SFLP reasonably relied on Plaintiffs' assertion that their theory of liability was based upon whether the landscaping mulch was a dangerous and flammable form of yard waste.[9]  This reliance was demonstrated in SFLP counsel's opening statement: "There is nothing inherently dangerous, nothing inherently hazardous about mulch as a product.  What plaintiffs have to show you is that the landlord knew and recognized that the mulch itself was a hazard, was a problem, was a defective product."  Trans. at 1-18.  In fact, not until the second day of trial did Plaintiffs indicate that they intended to unveil a new theory of liability -- that SFLP had breached a duty to pull back the mulch from the Building and a failure to do so caused the Fire to spread from the mulch to the Building.  Plaintiffs' change of their factual theory of liability came far too late.

Accordingly, a new trial should be granted because SFLP reasonably relied on the parties' Pretrial Memorandum and was unfairly surprised and severely prejudiced when Plaintiffs changed course, mid-trial, and introduced a new theory of liability.[10]  *See Vezos v. Field*, 72 Mass. App. Ct. 1109 (2008) (affirming trial court's ruling that "a mid-trial correction in strategy asserting an entirely new theory of recovery is fundamentally unfair").

---

[9] Plaintiffs' concise summary of the evidence flatly stated that their case was built upon SFLP's knowledge that "the bark mulch installed by the landscaping company was highly flammable" and was itself a "safety hazard."   D.E. 116 at 2-3.

[10] For example, if SFLP had been aware that the "mulch pull back" theory of liability was to be tried, then SFLP could have retained and called an expert to rebut that theory.

17

**5.   A new trial should be granted because the Court erroneously permitted Plaintiffs to introduce evidence of subsequent remedial measures.**

It is black letter law, of course, that evidence of subsequent remedial measures is not admissible to prove negligence.  Fed. R. Evid. 407.  Unfortunately, such evidence was improperly admitted here.

The Court, over SFLP's objection, permitted Plaintiffs to elicit prejudicial testimony from Ms. Jackson regarding the fact that after the Fire, SFLP took the precautionary measure of pulling back the mulch from its other buildings around the apartment complex.  This admission of subsequent remedial measures was erroneous because there was never a dispute about whether pulling back the mulch from the Building was feasible.[11]

Compounding the prejudicial effect of Ms. Jackson's testimony, the Court then ruled that SFLP, not the Plaintiffs, had opened the door to the admission of evidence of subsequent remedial measures and permitted Plaintiffs to cross-examine Mr. Homan regarding the same issue.  The prejudicial effect of this improper evidence of subsequent remedial measures was further compounded by the fact that it was the very last testimony the jury heard before it deliberated and compounded again during Plaintiffs' closing argument rebuttal.  The Court should therefore grant a new trial because it erroneously permitted the admission of highly prejudicial evidence of subsequent remedial measures.

**6.   A new trial should be granted because the Court erroneously permitted Plaintiffs to prove their emotional distress with self-serving medical evidence testimony after Plaintiffs failed to produce their medical records.**

None of the Plaintiffs offered any objective evidence to corroborate their claims of emotional distress.  Indeed, prior to trial, the Court granted SFLP's motion in limine precluding

---

[11] To be sure, evidence of subsequent remedial measures may be allowed under Rule 407 where feasibility is in dispute, but that was not the case here.

Plaintiffs from offering *any* medical evidence at trial to support their emotional distress claims because they failed to produce any medical documentation during discovery.

Despite its pre-trial ruling, the Court overruled SFLP's objections during the trial and permitted Plaintiffs to offer self-serving medical evidence testimony by, among other things, allowing Plaintiffs to testify about the medical attention they sought.  Plaintiff Gardner testified that she sought counseling from a therapist.  Plaintiff Pulisciano testified that she visited a doctor because of her anxiety attacks.  Plaintiff Fleteau testified that she went to see a therapist to cope with her pain.

Accordingly, the Court should grant a new trial because it erroneously permitted Plaintiffs to offer medical evidence in support of their claims for emotional distress even though Plaintiffs had not produced any medical records or documentation during discovery, and even though the Court expressly ruled prior to trial that Plaintiffs could not introduce any medical evidence at trial in support of their emotional distress claims.  SFLP reasonably relied on the Court's preclusive ruling, and it was unfairly prejudiced in being unable to adequately cross-examine Plaintiffs on their medical treatment.  For instance, without medical records, SFLP was unable to undertake meaningful *independent medical examinations* or depositions of care-givers to rebut Plaintiffs' alleged medical conditions or to test whether and to what extent their alleged emotional injuries were related to the Fire.

**7.  Plaintiffs' emotional distress claims were improperly based on deceased pets.**

Plaintiffs' emotional distress claims were improperly based upon the deaths of their pets as the Court granted SFLP's motion *in limine* precluding the introduction of such evidence.  For instance, Ms. Caissie was permitted to testify that "[m]y babies are in there. … I knew my dogs, my two dogs and my cats were in there.  Those were my kids."  Trans. at 3-79.  Counsel for

SFLP repeatedly objected to Ms. Caissie's further testimony, which the Court allowed to stand: "I just hope my guys didn't suffer, I hope none of them suffered.  We all suffer enough everyday."  Trans. at 3-82 to 3-83.  Ms. Cassie even went so far as to testify that she wished she had died with her pets.  Trans at 3-88 to 3-89.  Ms. Gardner testified to searching in the woods for her lost cat, Baxter, and experiencing allegedly severe emotional distress while she visited the pet food aisle of a store, Trans. at 3-38 at 3-44, and Ms. Felteau testified that her cat could not be rescued.  Trans. at 4-26.

The Court's jury instruction -- not to award damages for emotional distress as a result of a pet's demise -- was clearly insufficient to undo the prejudice and harm that had already occurred as the jury was struck by Plaintiffs' emotional testimony regarding their pets, which improperly influenced the outcome of the trial.

**IV.**   **Conclusion**

For the foregoing reasons, SFLP respectfully requests that the Court grant its Motion for Judgment as a Matter of Law and dismiss Plaintiffs' claims in their entirety.  Should Plaintiffs' claims survive, SFLP requests that the court vacate Plaintiffs' emotional distress damages as a matter of law.

Should the Court deny SFLP's Motion for Judgment as a Matter of Law or SFLP's request that Plaintiffs' emotional distress damages be vacated, SFLP requests that the Court grant a Remittitur or New Trial.

Respectfully submitted,

SIMPSON FINANCING LIMITED
PARTNERSHIP

By its attorneys,

/s/ Damon M. Seligson

20

Damon M. Seligson (BBO # 632763)
DiNicola, Seligson & Upton, LLP
185 Devonshire Street, Suite 902
Boston, MA 02110
(617) 279-2592
*Damon.Seligson@dsu-law.com*

/s/ Edward W. Waystack
Edward W. Waystack (BBO # 518300)
Robert W. Healy (BBO # 630714)
Cogavin & Waystack
One Center Plaza
Boston, MA 02108
(617) 742-3340
*eww@cogway.com*
*rwh@cogway.com*

/s/ Gordon P. Katz
Gordon P. Katz (BBO # 261080)
Timothy J. McLaughlin (BBO # 675560)
Holland & Knight LLP
10 Saint James Avenue
Boston, MA 02116
(617) 523-2700
*gordon.katz@hklaw.com*
*timothy.mclaughlin@hklaw.com*

Date: May 10, 2013
Boston, Massachusetts

## CERTIFICATE OF CONFERENCE

I, Damon M. Seligson, hereby certify that on the 8th day of May, 2013, counsel for the parties conferred in good faith, in accordance with Local Rule 7.1(a)(2), but were unable to resolve the issues presented in Simpson Financing Limited Partnership's Motion for Judgment as a Matter of Law, or, in the alternative for Remittitur or New Trial.

/s/ Damon M. Seligson
Damon M. Seligson

21

## CERTIFICATE OF SERVICE

I, Damon M. Seligson, hereby certify that a true copy of the foregoing document was served upon counsel of record for each party by electronic means this 10th day of May, 2013, as follows:

Stephen D'Angelo, Esq.
D'Angelo & Hashem, LLC
60 State Street, Suite 7000
Boston, MA 02109

Neil Judd, Esq.
D'Angelo & Hashem, LLC
60 State Street, Suite 7000
Boston, MA 02109

Michael P. Roche, Esq.
Murphy & Riley, P.C.
141 Tremont Street
Boston, MA 02111

Edward W. Waystack, Esq.
Cogavin & Waystack
One Center Plaza
Boston, MA 02108

Robert W. Healy, Esq.
Cogavin & Waystack
One Center Plaza
Boston, MA 02108

Eugene F. West, Esq.
West & Miyamoto
5151 Verdugo Way
Camarillo, CA 92012

Thomas P. Smith, Esq.
Caffrey & Smith, P.C.
300 Essex Street
Lawrence, MA 01840

/s/ Damon M. Seligson
Damon M. Seligson

22