

**D'Angelo & Hashem, LLC**
ATTORNEYS & COUNSELORS AT LAW

6 Beacon Street
Suite 505
Boston, MA 02108

Tel: 617-624-9777
Fax: 617-624-0999

March 25, 2009

Simpson Financing Limited Partnership
d/b/a Highlands at Dearborn
8110 East Union Avenue, Ste. 200
Denver, CO 80237

QRS Financing, LLC
8110 East Union Avenue, Ste. 200
Denver, CO 80237

Simpson Housing LLLP
8110 East Union Avenue, Ste. 200
Denver, CO 80237

Colomba, LLC
8110 East Union Avenue, Ste. 200
Denver, CO 80237

SHLP Holdings, LLLP
8110 East Union Avenue, Ste. 200
Denver, CO 80237

Paloma, LLC
3201 South Tarmac Drive, Suite 200
Denver, CO 80231

First American Property & Casualty
Insurance Company
114 East Fifth Street
Santa Ana, CA 92701

Multifamily Community Insurance
Agency, Inc.
12395 First American Way
Poway, CA 92065

**RE: Our client/your Tenant/Insured:**
**Property location:**

**Crystal Caissie**
**Highlands at Dearborn**
**19 Dearborn Road**
**Peabody, MA 01960**

**Date of Loss:**

**May 29, 2008**

## NOTICE OF CLAIMS
## DEMAND PURSUANT TO M.G.L. CHAPTER 93A

Dear Sir or Madam;

This office was retained by Crystal Caissie for her claim for property damage as a result
of the fire which occurred on May 29, 2008, at the Highlands at Dearborn apartment

complex, building 8, in Peabody, Massachusetts.  This is a formal demand letter submitted pursuant to Chapter 93A section 9 of the General Laws of the Commonwealth of Massachusetts.  As such you will have thirty (30) days to respond with an offer to settle this matter upon receipt of this letter.   In addition to the foregoing, you are hereby given notice of claims for negligence, negligent infliction of emotional distress, breach of contract, breach of express and implied warranties of habitability, and interference with quiet enjoyment.

## INTRODUCTION

On May 29, 2008, Simpson Financing Limited Partnership was the record owner of the property located at 8 Ashford Trail, in Peabody, Massachusetts, part of the apartment complex known as the "Highlands at Dearborn."  It is part of the property purchased from BVT/Fairfield Peabody Associates by deed of August 17, 2007.

Simpson Financing Limited Partnership d/b/a Highlands at Dearborn is controlled by QRS Financing LLC.  QRS Financing, LLC, is controlled by Simpson Housing LLLP.  Simpson Housing LLLP is controlled by Colomba, LLC.  Colomba, LLC, is controlled by SHLP Holdings LLLP.  SHLP Holdings LLLP is controlled by Paloma LLC.  Paloma LLC is controlled by Donald A. Simpson.  By virtue of their interoperation, any liability of Simpson Financing Limited Partnership extends through each entity through and including Paloma, LLC.  Notice and demand are, therefore, made to all such entities.  Unless referenced by individually, the foregoing shall be collectively referred to as "Simpson".

This Notice and demand is sent to you on behalf of Crystal Caissie (hereinafter "Claimant") for the recovery of her losses sustained in the fire which occurred on May 29, 2008, at the Highlands at Dearborn apartment complex. As a result of the negligence of Simpson in its failure to remove a known fire hazard, bark mulch that was ignited on previous occasions, the Claimant suffered substantial losses of personal property when the building located at 8 Ashford Trail caught fire and burned to the ground. The Claimant is aggrieved by virtue of the negligence and practices in violation of applicable statutory law and established precedent.  Claimant, Crystal Caissie has sustained emotional and financial losses as set forth below.

## FACTS

   A.  <u>Lease Signing and Sale of Insurance</u>

On March 21, 2008, the Claimant renewed her lease with the Highlands at Dearborn.  Her new lease was to commence on May 9, 2008, and would be for a term of one year. Claimant rented the apartment known as 839 at 8 Ashford Trail, Peabody Massachusetts. This property was managed by Simpson Property Management.

The Claimant purchased renter's insurance through employee of Simpson when she entered into her initial lease.  The sale of this policy was mandated by Simpson.  The policy was produced by First American Property & Casualty Insurance Company and offered by Multifamily Community Insurance Agency, Inc.  The policy was sold by a leasing agent of Simpson, who was not a licensed insurance agent.

Under duress and against public policy, the Claimant was told that she would not be leased an apartment unless she chose one of the two options for insurance policies, neither of which was explained to her.  The amounts of coverage for each policy were never disclosed.  The types of coverage were never disclosed.  Claimant was not told that she could purchase an independent policy.  Claimant was not permitted to seek adequate coverage.  As a result of the pressure sales tactics exerted upon her, Claimant chose the more expensive of the two policies and signed her lease.  At the time she signed the lease, the Claimant was led to believe she had purchased enough insurance to cover her potential property losses.

## B.  The Fire

There were many fires at the Highlands at Dearborn complex preceding the fire on May 29, 2008.  There were fires on May 21, 2007, January 15, 2008, and February 19, 2008.  Additionally, there were fires at the complex at various buildings in the days immediately preceding and the days immediately following the fire on May 29, 2008.  Those fires occurred on May 19, 2008, May 21, 2008, May 25, 2008, May 30, 2008, and June 1, 2008.  See **Exhibit B.** (individual reports).  Careless disposal of smoking materials caused dry wooden mulch to catch fire on those dates.   The mulch surrounding the buildings at the Highlands at Dearborn created an extremely hazardous condition due to the mulches' flammability characteristics.

Simpson was aware of the serious fire hazard the mulch posed.  However, in response to these fires, no warnings were given nor were steps taken to remove the mulch.  Rather, residents were asked to dispose of smoking materials to avoid a displeasing aesthetic.  Yet, as evidenced on page 4 of the Fire Investigation Summary Report for the fire which occurred on May 29, 2008, there was evidence produced by the Highlands that they were aware of the potential hazards of the careless disposal of smoking materials combined with the type of mulch that was present on the premises created a fire hazard.

At approximately 3:30 p.m. on Thursday, May 29, 2008, Highlands at Dearborn, 8 Ashford Trail, also known as Highlands at Dearborn Building 8, caught fire and was destroyed in a four-alarm blaze.  Crystal Caissie was a tenant in the Highlands at Dearborn Building 8.  The fire that raged through 8 Ashford Trail in Peabody, Massachusetts was started by the careless disposal of smoking materials.  See **Exhibit A** (fire investigation report).  In a little over hour the fire consumed Building 8 burning it to the ground.  The fire was so intense that it caused damage to surrounding buildings in the complex.  Crystal Caissie and many other tenants watched in horror and saw everything

they owned burn. Their beloved pets, all of their personal belongings, pictures of family, friends and loved ones, souvenirs, memories and precious gifts destroyed.

The Claimant lost of all of her personal property that was in the apartment at the time of the fire.  **See Exhibit C.** (personal property list). The Claimant has replaced a few items that were lost in the fire. However, she can never replace the bond he had with his two beloved dogs and can never replace the lost mementos from her life experience, photographs, gifts and heirlooms.

Crystal Caissie was not at home at the time the fire broke out.  She learned that the building was on fire when she received a phone call from her father who had seen the news coverage of the fire.  As she was driving home she could see the smoke and the flames from the building on the highway.  Upon her arrival at the Highlands, she was not able to go down to the area near the building to see if her pets had made it out of the building safely.  She knew soon after she arrived at the Highlands and saw the speed at which the fire was consuming the building that most of the pets that were in the building and were not rescued would ultimately perish. Crystal Caissie stood and watched the fire destroy the building and everything in it, including her two beloved dogs and two beloved cats.

Claimant was told by agents of Simpson that there were items saved and that they would be placed in a secure area on site.  There were very few items salvaged from the fire, and the site which held the items was never secured against theft.  None of Claimant's possessions were found.  She was forced to revisit the scene of the destruction for no reason.

Subsequent to the fire, the Massachusetts State Police Fire and Explosion Investigation Unit, Office of the State Fire Marshall, conducted an investigation into the fire to determine its cause.  The Fire Investigation Report issued by that office states that the origin of the fire was in the area next to the rear center tower of the building.  The cause of the fire was determined to be the careless disposal of smoking materials in an area where there was approximately a one inch layer of dry bark mulch.

When the Claimant contacted the First American Property and Casualty Insurance Company, she was informed that her policy covered only fifteen thousand dollars ($15,000.00) in property damage claims, which was never explained to her when she purchased the insurance.  This information was in contravention of what the employees of the Highlands at Dearborn and Simpson Property Management led the Claimant to believe when she was forced to purchase the policy.

The fire displaced Crystal Caissie.  She was financially and emotionally devastated from the fire.  She was forced to stay in a hotel for two weeks and then stay with friends.  She was forced to miss work from May 29, 2008, until August 5, 2008.  The Claimant has suffered emotionally as a result of the devastation.

## LIABILITY

    A.    <u>Negligence and Negligent Infliction of Emotional Distress</u>

Simpson had a duty to Claimant to maintain the premises in a safe condition.  Simpson knew that there were unsafe conditions on the property, specifically in the form of the dry mulch which caught fire repeatedly. It had notice and an opportunity to cure.  Simpson neglected, failed and or refused to ameliorate the hazardous condition.  Aware that the flammability of the mulch used around the buildings was a dangerous condition, Simpson should have taken steps to remedy the situation.  The failure to do so constitutes a breach of duty and negligence on the part of the Simpson.   Simpson is responsible for the Claimant's property damage that was proximately caused by its negligence.  And, as set forth in <u>Sullivan v. Boston Gas Co.</u>, 414 Mass. 129, 134 (1993), Simpson is responsible for the emotional distress it inflicted on Claimant by its negligence.

    B.    <u>Breach of Contract, Breach of Express and Implied Warrants of Habitability, Interference with Quiet Enjoyment</u>

By virtue of the destruction of the premises by fire, caused by the negligence as previously set forth, Simpson has violated the terms of the lease, in breach of contract. The lease guarantees that Claimant will be able to occupy the leased premises.  See, Apartment Lease Contract, Paragraph 1. **See <u>Exhibit D.</u>** That is now impossible because of the actions and omissions of Simpson.  Failure to provide the premises constitutes a material breach of that contract.  Simpson is responsible for all damages flowing from that breach, including but not limited to, property damage and emotional distress.

Simpson has further breached the implied warranty of habitability as all parts of the premises are in material violation of the minimum standards of habitability as expressed in the State Sanitary Code, the State Building Code and other regulations.  See, <u>Boston Hous. Auth. v. Hemingway</u>, 363 Mass. 184 (1973).  The destruction by fire has rendered the premises uninhabitable.  Simpson is responsible for all damages flowing from that breach, including but not limited to, property damage and emotional distress.

Massachusetts law states that any lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant shall be liable for actual and consequential damages or three month's rent, which ever is greater.  See, Mass. Gen. Laws, ch. 186, sec. 14.  Here, by failing to remedy the hazard which ultimately caused the fire, Simpson interfered with the quiet enjoyment of Claimant. Simpson failed to act reasonably, so the natural and probable consequence was interruption of Claimant's rights.  Simpson is responsible for all damages flowing from that breach, including but not limited to, property damage and emotional distress, as well as attorneys' fees.  See, <u>Simon v. Solomon</u>, 385 Mass. 91 (1982).

    C.    <u>Violations of Massachusetts Insurance Law</u>

Simpson sold or attempted to sell property and casualty insurance directly to the Claimant through their leasing agents, not through a licensed insurance agent.  Only licensed agents are permitted to sell such insurance.  See, Mass.Gen.Laws, ch 175, sec. 162I.  Simpson collected the insurance premiums, despite selling such insurance, in contravention of Mass.Gen.Laws, ch. 175, sec. 164.  See, Lease Addendum, Liability Insurance Required of Resident, Paragraph 9.

Simpson, First American Property and Casualty Insurance Company (hereinafter "First American") and Multifamily Community Insurance Agency, Inc. (hereinafter "Multifamily"), were required to use a standard application form that would have helped Claimant assess insurance needs.  See, Mass.Gen.Laws, ch. 175, sec. 98.  Simpson falsely represented that the specific insurance policy sold was a requirement of the lease and that only two options were possible.  Under Massachusetts law, a landlord is not permitted to require a tenant to enter into any agreement, including an insurance agreement, the effect of which is to indemnify the landlord. Mass.Gen.Laws, ch. 186, sec. 15.  Such constituted misrepresentation, reasonably relied upon by Claimant.  It also constitutes a criminal offense of obtaining payments of premiums by fraudulent representation.  See, Mass.Gen.Laws, ch. 175, sec. 170.  Such further constitutes unlawful and unlicensed insurance advice, in violation of Mass.Gen.Laws, ch. 175, sec. 177A-177D, as well as criminal misrepresentation by the advisor, in violation of Mass.Gen.Laws, ch 175, sec. 181, and an unfair trade practice, in violation of Mass.Gen.Laws, ch. 176D, sec. 3(10).  Additionally, Claimant was never given the insurance contract required by Mass.Gen.Laws, ch. 175, sec. 99, which failure prevented Claimant from knowing precisely what was purchased and on what terms.

Collectively, the foregoing violations of chapter 175 are deemed unlawful.  See, Mass.Gen.Laws, ch. 175, sec. 3 & 194.  Moreover, Simpson is directly liable for the contracts of insurance sold.  See, Mass.Gen.Laws, ch. 175, sec. 171.  Because Claimant reasonably believed that she was purchasing a contract sufficient to cover his property losses in the event of fire, Simpson is fully liable for her property losses.  First American and Multifamily, in permitting the sale of what was deemed to be sufficient coverage shall be held to that standard, per Mass.Gen.Laws, ch. 175, sec. 193.

Under Massachusetts law, common law misrepresentation claims provide the basis for liability under the Massachusetts deceptive trade practices statute.  Damon v. Sun Co., Inc., 87 F.3d 1467 (1996).  In this instance, the agents of Simpson misrepresented the insurance policy which was sold to the Claimant, leading her to believe that she had greater coverage for property damage than what she actually purchased.  Such misrepresentation was of a material fact.  Whether the leasing agent intentionally or negligently misrepresented the coverage which the Claimant was purchasing, such a misrepresentation is a violation of Mass.Gen.Laws, ch. 93A, §2(a).  See Glickman v. Brown, 21 Mass.App.Ct. 229 (1985).  In addition, the aforementioned violation of Mass.Gen.Laws, ch. 175, sec. 181, constitutes *per se* unfair and deceptive practice.  See, Mass.Gen.Laws, ch. 176D, sec. 3(12).

Additionally, conduct may be "deceptive if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." Aspinall v. Philip Morris Cos., 442 Mass. 381 (2004).  In this case, had the Claimant had the insurance policy fully explained to her she would have either purchased additional insurance subsequent to entering the lease to fully insure her belongings, or would have obtained a policy from a different insurer had he been informed that such a policy would fulfill the requirements of the lease.  It is notable that the Lease Addendum, Liability Insurance Required of Resident form does not even identify First American or Multifamily, but rather identifies RegistryTLC, offered and produced by Multifamily and First American, respectively, as the insurer.  Simpson's, First American's, Multifamily's failure to make proper explanations constituted unfair and deceptive practices and were a willful violation of Mass.Gen.Laws, ch. 93A.  See Lodie v. Anton's Cleaners, 1993 Mass. App. Div. 29 (1993).

## DAMAGES

### Property Damage

The Claimant suffered a substantial loss, all of her personal property.  The property that was destroyed in the fire had an approximate value of thirty one thousand eight hundred thirty one dollars and forty three cents ($31,831.43).  We are aware that payment was made pursuant to the insurance policy which she purchased.

**Ms. Caissie must be compensated for her damaged property related to this fire.**

The Claimant was forced to miss time from work as a result of the fire.  The value of her lost wages is approximately eleven thousand two hundred fifty dollars ($11,250.00)

**Ms. Caissie must be compensated for his lost wages related to this fire.**

The Claimant suffered emotionally as a result of the devastation caused by the fire.  Although it is impossible to attach a monetary figure to the losses, the trauma of the fire itself should entitle Claimant to one hundred thousand dollars ($100,000.00).  The loss of the dogs and cats should entitle claimant to fifty thousand dollars ($50,000.00) per pet.  The demand for his emotional pain and suffering is three hundred thousand dollars ($300,000.00).

**Mr. Caissie must be compensated for his pain and suffering related to this fire.**

## DEMAND

In consequence of the aforementioned negligence, breaches, violations of insurance law and by the violation of Massachusetts General Laws, chapter 93A, demand for compensation in the amount of three hundred forty three thousand eighty one dollars and

forty three cents ($343,081.43).  is hereby made to satisfy all of the claims of Crystal Caissie. Such demand is confidential settlement communication and shall not be admissible as evidence.

The offer to settle this matter shall remain open for thirty (30) days.  In the event settlement is not reached, the Claimant reserves the rights to pursue her claims to their fullest extent, including double or treble damages, costs and attorney's fees, should such be applicable.

## RESPONSE TO DEMAND

Please be advised that if this demand is not accepted within thirty (30) days, the time period mandated by the statute, my client Charles Varnes will pursue all legal remedies available to her, including the recovery of multiple damages, attorney's fees and costs under the Massachusetts General Laws Chapter 93A section 9.  I respectfully anticipate your timely response.


Sincerely,


Stephen L. D'Angelo
Counsel for Crystal Caissie

# EXHIBIT A

# Fire Investigation Summary Report

Case Number: **2008-117-0849**
Controlling Case Number: None
Case Type: **F30 Fire - Accidental**

Report Creator: **Sheryl A O'Donnell**
Lead Investigator(s): **Sheryl A O'Donnell**   Team: **North**

FIU Requested By: **Insp. Joseph DiFranco from Peabody Fire Department**
FIU Requested On:

Date and Time of
Incident:   **05/29/2008 at approximately 15:51 PM**
Address/ Location of
Incident:   **8 Ashford Trail  Peabody,  MA**

## Property Investigated

Type of Investigation: **Fire**
Type of Property: **Residential**

### Protection Systems:
Smoke Detector: **Operational**
Comments: **8 Ashford Trail, Peabody, Massachusetts is a multi-unit residential structure with in The Highlands at Dearborn luxury apartment complex comprised of 18 individual apartment buildings. The subject property is more particularly described as a three story, wood framed, multi-unit (38 units) dwelling. The A side of the structure contained garages on the first floor level. The foundation was poured concrete. The exterior was covered by vinyl siding. The roof was a pitched style covered by asphalt shingles with a common attic space that extended the length of the building. Heat was provided by forced hot air by natural gas.**
**Fourteen parked motor vehicles were also damage by heat and smoke (Ma Reg: 46AF44, 89GC45, 74BY66, 541TJH, 31VZ79, 61BE56, 95HM99, 56SY59, 44FM47, 27728, 462VFC, 34AM21, 15PB52, and 74NC60)**

## Fire Source

Cause of Fire: **Accidental**
Ignition: **careless disposal of smoking materials (cigarette butt)**
Material Ignited: **bark mulch, wood, vinyl siding, common combustibles, etc.**
Explanation:

NOTIFICATION/RESPONSE:

1.    On Thursday, May 29, 2008 at approximately 1551 hours Peabody Fire Department received multiple 911 calls from employees, residents, and motorists on Rte. 128 reporting a fire outside of The Highlands at Dearborn luxury apartment complex in Peabody, Massachusetts. The Peabody Fire Department responded commanded by Captain Joseph Daley. The fire location was at 8 Ashford Trail a multi-unit residential structure containing 38 independent units. Later I learned, that first arriving police officers observed smoke emanating from the front of Building #8 (8 Ashford Trail) and a small exterior fire in the rear which extended upward along the center tower (Tower #2) in the immediate area of a bank of natural gas meters. Fire moved quickly upward to the soffits and outward along the roofline, into the common attic space, and vented through the roof. This fire went to four alarms before being brought under control and extinguished. Exposure damage due to intense heat and smoke resulted

Fire Investigation Summary Report

to adjacent buildings. (Buildings #9/ 9 Magnolia Way, #10/ 10 Overlook Trail, and #16/ 16 Silv leaf Way) along with 14 parked vehicles. Four minor injuries were reported to fire fighters as a result of this fire and several pets perished in the blaze. A public shelter was utilized at Salem State College for displaced residents totaling approximately 250 persons. A secondary exterior fire broke out to Building #11
(11 Magnolia Way) due to displaced hot ambers.

2.        Subsequently, at approximately 1620 hours Peabody Fire Department contacted t State Police Fire and Explosion Investigation Section in Stow requesting assistance with the investigation. Trooper William Qualls contacted me directly and assigned me the investigation. arrived on scene at 1710 hours along with Trooper Donald Bossi who assisted. We met with Peabody Fire Inspector Joseph DiFranco Jr. and Peabody Police Detective Eric Ricci. A joint multi-agency investigation into the origin and cause was initiated, therefore, this report represen a collection of all pertinent investigative information. Beverly and Danvers Fire Investigation Units also assisted with the initial investigation.


INTERVIEWS/INVESTIGATION:

3.        Witness interviews were conducted by members of the Peabody Fire and Police Departments, State Police Fire and Explosion Investigation Section, along with Danvers and Beverly Fire Investigation Units. A synopsis of the more pertinent interviews are as follows:

    a.        I had an opportunity to speak with maintenance worker Scott Pickard who told me the afternoon of the fire (5/29/08) he was at Building #2 (2 Magnolia Way) with boss Andy Filippone trying to reset the fire panel which was sounding. While completing that task co-worker Tom Dubois calls on the radio yelling there was a "Fire at Building#8 in the back!" Mr. Pickard explained that he and Andy both jumped into his truck and drove to Building# 8. While on the way there Mr. Pickard told us he called 911. Mr. Pickard described "a small fire on the ground the size of a water bottle with ash around it." Mr. Pickard further described that the wind picked up and the fire started to catch the siding. According to Mr Pickard, Tom Dubois had gotten a fire extinguisher and attempted to put it out but it didn't work. "In a heartbeat it was small then went to the size of the meters." Mr. Pickard explained. Mr. Pickard said they have had many bark mulch fires this year from people "flicking cigarettes". According to Mr. Pickard as early as Tuesday or Wednesday of this week behind Building# 7 (7 Silver leaf Way) was another fire causing exterior damage.

    b.        We also spoke with maintenance worker Thomas Dubois who told us he was working at Building# 8 (8 Ashford Trail) around 2:30pm cleaning and vacuuming the front and back of all three levels of the middle tower then to the far left tower and did the same. Mr. Dubois explained he finished up around 3pm then went to the shop behind Building# 11 and #9. Mr. Dubois stated by then he could smell something burning and drove around until he saw smoke at Building#8. The smoke was coming from the back and blowing to the right According to Mr. Dubois who was out front at the time. Mr. Dubois went to the corner of Building# 8 near the playground and saw the fire in middle of the back of Building# 8. Mr. Dubois told us he ran up to the building and saw the mulch was on fire. He further described four

spots that were flaming. Mr. Dubois got the fire extinguisher from the middle tower and tried to put it out but it but it didn't work. According to Mr. Dubois the fire was beneath the gas meters and it soon began to "flame up 10 inches to a foot" under the pipe area coming from the ground. Mr. Dubois explained there had been 3 to 4 recent mulch fires at The Highlands. Mr. Dubois described putting one out near the clubhouse recently.

## SCENE EXAMINATION:

4.        The fire scene examination commenced on Friday, May 30, 2008 at approximately 0900 hours once suppression efforts had been completed and all resources were gathered. This examination was conducted by Peabody Fire Inspector Joseph DiFranco Jr., Firefighter Chris Dowling, State Police Sergeant Peter Cummings, Troopers Steven Cunningham, Peter Bramante and I. Trooper Jay McCarthy of State Police Crime Scene Services was also on scene to assist with documentation. Peabody Police, State Police, and Peabody Fire security details secured the structure until investigators returned to the scene. This examination consisted of observations of the exterior and interior damage to the structure, which resulted from smoke, heat, and flames. In essence, we observed the top two floors of the structure had been consumed by the fire on every side. Essentially what remained was the garages on the first level most of which had ceiling collapse along the A side. Extensive fire damage was observed along the C side of the structure where we noted that the fire damage began low at ground level and consumed the majority of the three floors above. Heavy charring to structural members and extensive collapse to the walls and floors was also observed in this immediate area, more notably in the center portion of the C wall.

5.        Investigators were unable to enter the interior of the structure due to the structural collapse. We did visit Building# 3 (3 Silver leaf Way) which is an exact replica of the effected structure in order to get a sense of the entire layout. After making all of the above observations the scene examination focused on the C side exterior. Investigators agree that based on early witness statements, and significant low fire damage observed we meticulously excavated the area just outside the middle tower (Tower #2) at the rear entrance taking care to examine the debris for anything out of the ordinary. As heavy structural debris were moved away from this area (walls, doors, charred timbers, etc.) we uncovered a bank of four natural gas meters stacked (2 top/2 bottom) located along the C wall on the right of the entrance way approximately six    inches above ground level. The wall behind the bank of meters had the vinyl siding completely consumed with the pressed particleboard underneath charred heavily. The heavy char began at the poured concrete foundation and extended upward and out with a small section of the wallboard burned through. Behind this C wall section at the meters was a small exterior utility closet that housed a gas fired hot water heater and simple small storage. A detailed examination of this room was conducted and its equipment was negative for any defect or ignition source. No fire damage was located inside this closet and its structure was fully intact. Conversely, the steel entry door to the left of the gas meter bank was catastrophic. Heavy char was also observed low on the doorframe of this entrance and a support pillar standing approximately two feet forward from the gas meter bank sustained extremely heavy char on the side facing inward toward the meters and its char was also very low beginning along the concrete footing.

6.        Continuing our examination we excavated the small debris remaining on the

ground in front of the gas meter bank at the base of the poured concrete foundation. We were a
to recover small pieces of bark mulch in this area, sections of gas meters, and regulators that
failed due the extreme heat. Continuing our efforts in this area we located several cigarette but
filters on the ground just below the gas meter bank and to the right of the center tower entrance
walkway. Along with this discovery we also located a pack of cigarettes (Marlboro Lights) bes
the walkway covered over in the mulch. Investigators also excavated and examined the
underground gas line and feed to the meter bank with the assistance of heavy equipment exposi
the two sections of piping. Tests were conducted as to the integrity of the piping with the
assistance of Keyspan and DTE, which were negative for any underground breeches.

CONCLUSION:

7.        Based on the scene examination, witness statements, early fire photography, and
equipment observations, it is the collective opinion of the fire investigation team that the fire tha
occurred at 8 Ashford Trail in Peabody on May 29, 2008 was accidental. All patterns support th
theory that the area of origin was located on the exterior C side of the structure, in the immediate
area next to the rear center tower (Tower #2) entrance just below a bank of natural gas meters.
The examination of the underground gas lines revealed no natural gas leak. All heat generating
appliances and fixtures have been eliminated as a possible ignition source. Investigators believe
that careless disposal of smoking materials was the ignition source to an area containing
approximately one inch layer of dry bark mulch which burned undetected until it extended to the
exterior vinyl siding (C side) which resulted in the eventual breech of the gas meters essentially
fueling the fire to an intense level in a short period of time. Investigators located evidence that
prior mulch fires had been both reported and unreported to authorities in just days prior to this
fire. Documents (5/21/07, 1/15/08, 2/19/08) produced by The Highlands were recovered
supporting the fact that The Highlands management were aware of the potential hazards of
cigarette disposal by residents and had instituted fines for violators. No evidence was found that
this fire was intentionally set. Case closed.

Respectfully submitted,

Sheryl A. O'Donnell, #2904
Trooper, Massachusetts State Police
Fire and Explosion Investigation Section
P.O. Box 1025, State Road
Stow, Massachusetts 01775

## Evidence

No Evidence

Fire Investigation Summary Report

## Photos

Taken By:   Police Department

Description / Explanation / Comments:
State Police Crime Scene Services- Trooper Jay McCarthy #3025

## K-9

K-9 Not Used

Fire Investigation Summary Report

Occupants

Fire Investigation Summary Report

St.Laurent, Daniel  -- 8 Ashford Trail #807  Peabody, MA  01960

Gardner, Gayle  -- 8 Ashford Trail #807  Peabody, MA  01960

Maguire, Kim  -- 8 Ashford Trail #808  Peabody, MA  01960

Squeglia, Jessica  -- 8 Ashford Trail #809  Peabody, MA  01960

Collier, Sean  -- 8 Ashford Trail #813  Peabody, MA  01960

Zizza, Frank  -- 8 Ashford Trail #817  Peabody, MA  01960

Zizza, Michael  -- 8 Ashford Trail #817  Peabody, MA  01960

Schreiner, Chantal  -- 8 Ashford Trail #819  Peabody, MA  01960

Morando, Edward  -- 8 Ashford Trail #825  Peabody, MA  01960

Iacopino, Fabio  -- 8 Ashford Trail #826  Peabody, MA  01960
DOB: Unknown,

Varnes, Charles  -- 8 Ashford Trail #828  Peabody, MA  01960
SSN: Unknown,

Houston, Rebecca  -- 8 Ashford Trail #828  Peabody, MA  01960
SSN: Unknown,

Dilorio, Emilio  -- 8 Ashford Trail #829  Peabody, MA  01960

Grant, Pamela  -- 8 Ashford Trail #833  Peabody, MA  01960
DOB: Unknown,

Carmichael, Marisa  -- 8 Ashford Trail #834  Peabody, MA  01960

Jackson, Tabitha  -- 8 Ashford Trail #835  Peabody, MA  01960

Moise, Anthony  -- 8 Ashford Trail #837  Peabody, MA  01960

Peppe, Tanya  -- 8 Ashford Trail #837  Peabody, MA  01960

Caissie, Crystal  -- 8 Ashford Trail #839  Peabody, MA  01960

Miller, Ian -- 8 Ashford Trail #8010 Peabody, MA 01960
DOB: Unknown, ████████████ ████████████

Dzamba, Stephanie -- 8 Ashford Trail #8010 Peabody, MA 01960
████████████ ████████████ ████████████

Picardi, Matt -- 8 Ashford Trail #8011 Peabody, MA 01960
DOB: Unknown, ████████████ ████████████

Clarke, Meg -- 8 Ashford Trail #8011 Peabody, MA 01960
DOB: Unknown, ████████████ ████████████

Dingle, Jeff -- 8 Ashford Trail #8110 Peabody, MA 01960
████████████ ████████████ ████████████

Mistretta, Jennifer -- 8 Ashford Trail #8210 Peabody, MA 01960
████████████ ████████████

Mistretta, Congetta -- 8 Ashford Trail #8210 Peabody, MA 01960
████████████ ████████████

Felteau, Sabrina -- 8 Ashford Trail #8212 Peabody, MA 01960
████████████ ████████████

Felteau, Louise -- 8 Ashford Trail #8212 Peabody, MA 01960
████████████ ████████████ ████████████

Choo, Amanda -- 8 Ashford Trail #8311 Peabody, MA 01960
████████████, SSN: Unknown, ████████████

Takach, Paul -- 8 Ashford Trail #8311 Peabody, MA 01960
████████████ SSN: Unknown, ████████████

McLaughlin, Rick -- 8 Ashford Trail #8312 Peabody, MA 01960
████████████ ████████████ ████████████

Dempsey, Stephanie -- 8 Ashford Trail #8312 Peabody, MA 01960
████████████ ████████████ ████████████

Iocco, Maria -- 8 Ashford Trail #823 Peabody, MA 01960
DOB: Unknown, SSN: Unknown, ████████████

Iapicca, Suzanne -- 8 Ashford Trail #808 Peabody, MA 01960
DOB: Unknown, SSN: Unknown, ████████████

Amorim, Joyce -- 8 Ashford Trail #818 Peabody, MA 01960
DOB: Unknown, SSN: Unknown, Phone: Unknown

Cagliuso, Theresa -- 8 Ashford Trail #818 Peabody, MA 01960
DOB: Unknown, SSN: Unknown, ████████████

Torra Jr., Anthony -- 8 Ashford Trail #824 Peabody, MA 01960
DOB: Unknown, SSN: Unknown, ████████████

German, Grey -- 8 Ashford Trail #827 Peabody, MA 01960
DOB: Unknown, SSN: Unknown, ████████████

Sargent, Rebecca -- 8 Ashford Trail #827  Peabody, MA  01960
    DOB: Unknown,  SSN: Unknown, ████████████

O'Reilly, Franceska -- 8 Ashford Trail #835  Peabody, MA  01960
    DOB: Unknown,  SSN: Unknown, ████████████

Moise, Anthony -- 8 Ashford Tail #837  Peabody, MA  01960
    ████████████████████  ████████████

## Injuries

Rhueame, Paul -- 47 Lowell St.  Peabody, MA  01960
    DOB: Unknown,  SSN: Unknown, ████████████    Injury Status: Injured -- Fire Fighter

Kolodziej, K -- 47 Lowell St.  Peabody, MA  01960
    DOB: Unknown,  SSN: Unknown, ████████████    Injury Status: Injured -- Fire Fighter

Martin, Michael -- 47 Lowell St.  Peabody, MA  01960
    DOB: Unknown,  SSN: Unknown, ████████████    Injury Status: Injured -- Fire Fighter

Lynch, Paul C -- 47 Lowell St.  Peabody, MA  01960
    DOB: Unknown,  SSN: Unknown, ████████████    Injury Status: Injured -- Fire Fighter

## Owner

Associates, LLP, Fairfield Peabody -- P.O. Box 1282  Boston, MA  02117
    DOB: Unknown,  SSN: Unknown,  Phone: Unknown

## Reported By

Pickard, Scott -- 14 Dooling Cir.  Peabody, MA  01960
    ████████████  ████████████  ████████████

## Discovered By

Dubois, Thomas G -- 2 Magnolia Way #221  Peabody, MA  01960
    ████████████  ████████████  ████████████

## Witnesses

O'Keefe (firefighter), Timothy -- 47 Lowell St. Peabody, MA 01960
SSN: Unknown,

Desmond (fire fighter), Robert F -- 47 Lowell St. Peabody, MA 01960
SSN: Unknown,

Daly (Peabody Fire), Joseph L -- 47 Lowell St. Peabody, MA 01960
SSN: Unknown,

Jacavanco (fire fighter), William -- 47 Lowell St. Peabody, MA 01960
SSN: Unknown,

Lynch (fire fighter), Steven -- 47 Lowell St. Peabody, MA 01960
SSN: Unknown,

Pereira, Joseph -- 1413 Silverleaf Way Peabody, MA 01960
SSN: Unknown,

Maurice, Perry -- 16 Silverleaf Way #24 Peabody, MA 01960
DOB: Unknown, SSN: Unknown,

Pickard, Scott -- 14 Dooling Cir. Peabody, MA 01960

Dubois, Thomas G -- 2 Magnolia Way #221 Peabody, MA 01960

Filippone, Andrew -- Unknown Address Peabody, MA 01960

Rossino, Louis M -- 15 Silverleaf Way #1514 Peabody, MA 01960

Lilly, Andy -- 16 Silverleaf Way #1635 Peabody, MA 01960

# EXHIBIT B

**Narrative:**

Caller Name : CERULLI,JUSTIN
Caller Phone : (978) 278-5696   COID=CMCST
askelton ; 2008/05/19 11:15:46 - Engine 5 AT EVENT MANNING IS 3
askelton ; 2008/05/19 11:15:57 - CAR_2 AT EVENT MANNING IS 1
askelton ; 2008/05/19 11:16:22 - Engine 3 AT EVENT MANNING IS 3
askelton ; 2008/05/19 11:16:51 - Engine 1 AT EVENT MANNING IS 4


911 ; 2008/05/19 11:06:45
Time of Call : 2008/05/19 11:06:41
Phone Number : (978) 278-5696   COID=CMCST
Caller Name : CERULLI,JUSTIN
Street Number : 9
Street Name : MAGNOLIA WY
Service Municipality : PEABODY
ESN : ESN=335     MTN:978-278-5696
askelton ; 2008/05/19 11:11:12
FIRE ALARM RECIEVED A REPORT OF BURNING WIRES AGAINST A HOUSE
askelton ; 2008/05/19 11:11:27
FIRE ALARM STRUCK BOX 875
askelton ; 2008/05/19 11:21:28
ENGINE 5 REPORTS A SMALL MULCH FIRE POSSIBLY SPREADING TO THE BUILDING
Engine 5 remained on scene and emptied their whole tank on the mulch as a precaution.
K2 also en route to the scene at 11:46.
K2 on scene 11:56.
Engine 5 and K2 Returning from the scene at 12:08

| FDID | * | State | * | Incident Date | 2008 | * | Station | 182 | Incident Number 08-0002675 | * | 000 | * | Change No Activity | Basic |

**B   Location** ☐ Check this box to indicate that the address for this incident is provided on the Wildland Fire Module in Section B "Alternative Location Specification". Use only for Wildland Fires.   Census Tract [___] - [___]

- ☒ Street address
- ☐ Intersection
- ☐ In front of
- ☐ Rear of
- ☐ Adjacent to
- ☐ Directions

Number/Milepost | Prefix | SILVER LEAF WAY Street or Highway | Street Type | Suffix

Apt./Suite/Room | PEABODY City | MA State | 01960 Zip Code

Cross street or directions, as applicable

**C   Incident Type** *

1401 | Mulch Fire
Incident Type

**D   Aid Given or Received** *

1 ☐ Mutual aid received
2 ☐ Automatic aid recv.
3 ☐ Mutual aid given
4 ☐ Automatic aid given
5 ☐ Other aid given
N ☒ None

Their FDID | Their State

Their Incident Number

**E1   Date & Times**     Midnight is 0000

Check boxes if dates are the same as Alarm Date.   ALARM always required

| | | Month | Day | Year | Hr Min Sec |
| Alarm * | | 05 | 21 | 2008 | 10:49:09 |

ARRIVAL required, unless canceled or did not arrive

| ☐ Arrival * | 05 | 21 | 2008 | 10:54:32 |

CONTROLLED Optional. Except for wildland fires

☐ Controlled

LAST UNIT CLEARED, required except for wildland fires

Last Unit
☐ Cleared | 05 | 21 | 2008 | 11:16:24 |

**E2 Shift & Alarms**   Local Option

3 | | |
Shift or Platoon | Alarms | District

**E3**   Special Studies   Local Option

Special Study ID# | Special Study Value

**F   Actions Taken** *

10 | Fire control or
Primary Action Taken (1)

Additional Action Taken (2)

Additional Action Taken (3)

**G1   Resources** *

☐ Check this box and skip this section if an Apparatus or Personnel form is used.

| | Apparatus | Personnel |
| Suppression | 0001 | |
| EMS | | |
| Other | 0006 | |

☐ Check box if resource counts include aid received resources.

**G2 Estimated Dollar Losses & Values**

LOSSES: Required for all fires if known. Optional for non fires.

| | | | | None |
| Property | $ | , 000 , 000 | ☐ |
| Contents | $ | , 000 , 000 | ☐ |

PRE-INCIDENT VALUE: Optional

| Property | $ | , 000 , 000 |
| Contents | $ | , 000 , 000 |

**Completed Modules**
- ☒ Fire-2
- ☐ Structure-3
- ☐ Civil Fire Cas.-4
- ☐ Fire Serv. Cas.-5
- ☐ EMS-6
- ☐ HazMat-7
- ☐ Wildland Fire-8
- ☒ Apparatus-9
- ☒ Personnel-10
- ☐ Arson-11

**H1* Casualties** ☐ None

| | Deaths | Injuries |
| Fire Service | | |
| Civilian | | |

**H2   Detector**
Required for Confined Fires.

1 ☐ Detector alerted occupants
2 ☐ Detector did not alert them
U ☐ Unknown

**H3   Hazardous Materials Release**
- N ☐ None
- 1 ☐ Natural Gas: slow leak, no evacuation or HazMat actions
- 2 ☐ Propane gas: <21 lb. tank (as in home BBQ grill)
- 3 ☐ Gasoline: vehicle fuel tank or portable container
- 4 ☐ Kerosene: fuel burning equipment or portable storage
- 5 ☐ Diesel fuel/fuel oil: vehicle fuel tank or portable
- 6 ☐ Household solvents: home/office spill, cleanup only
- 7 ☐ Motor oil: from engine or portable container
- 8 ☐ Paint: from paint cans totaling < 55 gallons
- 0 ☐ Other: Special HazMat actions required or spill > 55gal., Please complete the HazMat form

**I   Mixed Use Property**
- NN ☐ Not Mixed
- 10 ☐ Assembly use
- 20 ☐ Education use
- 33 ☐ Medical use
- 40 ☐ Residential use
- 51 ☐ Row of stores
- 53 ☐ Enclosed mall
- 58 ☐ Bus. & Residential
- 59 ☐ Office use
- 60 ☐ Industrial use
- 63 ☐ Military use
- 65 ☐ Farm use
- 00 ☐ Other mixed use

**J   Property Use** *   Structures
- 131 ☐ Church, place of worship
- 161 ☐ Restaurant or cafeteria
- 162 ☐ Bar/Tavern or nightclub
- 213 ☐ Elementary school or kindergarten
- 215 ☐ High school or junior high
- 241 ☐ College, adult education
- 311 ☐ Care facility for the aged
- 331 ☐ Hospital

- 341 ☐ Clinic, clinic type infirmary
- 342 ☐ Doctor/dentist office
- 361 ☐ Prison or jail, not juvenile
- 419 ☐ 1-or 2-family dwelling
- 429 ☒ Multi-family dwelling
- 439 ☐ Rooming/boarding house
- 449 ☐ Commercial hotel or motel
- 459 ☐ Residential, board and care
- 464 ☐ Dormitory/barracks
- 519 ☐ Food and beverage sales

- 539 ☐ Household goods, sales, repairs
- 579 ☐ Motor vehicle/boat sales/repair
- 571 ☐ Gas or service station
- 599 ☐ Business office
- 615 ☐ Electric generating plant
- 629 ☐ Laboratory/science lab
- 700 ☐ Manufacturing plant
- 819 ☐ Livestock/poultry storage (barn)
- 882 ☐ Non-residential parking garage
- 891 ☐ Warehouse

Outside
- 124 ☐ Playground or park
- 555 ☐ Crops or orchard
- 569 ☐ Forest (timberland)
- 807 ☐ Outdoor storage area
- 919 ☐ Dump or sanitary landfill
- 931 ☐ Open land or field

- 936 ☐ Vacant lot
- 938 ☐ Graded/care for plot of land
- 946 ☐ Lake, river, stream
- 951 ☐ Railroad right of way
- 960 ☐ Other street
- 961 ☐ Highway/divided highway
- 962 ☐ Residential street/driveway

- 981 ☐ Construction site
- 984 ☐ Industrial plant yard

Lookup and enter a Property Use code only if you have NOT checked a Property Use box:

Property Use | 429

Multifamily dwelling

NFIRS-1 Revision 03/11/99

09229 MA 5 21 2008 08-0002675 000 Complete Narrative

FDID

**Narrative:**

Caller Name : AT&T MOBILITY, (866) 915-5600
Caller Phone : (978) 239-4850   COID=ATTMO
mpellizzaro ; 2008/05/21 10:54:32 - Engine 4 AT EVENT MANNING IS 3
mpellizzaro ; 2008/05/21 10:54:54 - Engine 5 AT EVENT MANNING IS 3
mpellizzaro ; 2008/05/21 10:55:10 - Engine 3 AT EVENT MANNING IS 3
mpellizzaro ; 2008/05/21 11:01:38 - K2 AT EVENT MANNING IS 1
mpellizzaro ; 2008/05/21 11:01:41 - K3 AT EVENT MANNING IS 1


911 ; 2008/05/21 10:49:09
Time of Call : 2008/05/21 10:49:05
Phone Number : (978) 239-4850   COID=ATTMO
Caller Name : AT&T MOBILITY, (866) 915-5600
Street Number : 4
Street Name : DEARBORN RD
Service Municipality : PEABODY
ESN : ESN=601      MTN:978-511-7541
Longitude : -070.987794
Latitude : +042.522894
mpellizzaro ; 2008/05/21 10:56:35
POLICE REPORT SMOKE COMING FROM APARTMENT 116
mpellizzaro ; 2008/05/21 10:56:50
911 CALLER REPORT SMOKE IN AREA
mpellizzaro ; 2008/05/21 10:57:21
FA TRANSMITTED BOX 875
mpellizzaro ; 2008/05/21 10:57:58
Engine 4 REPORTED OUTSIDE MULCH FIRE      CODE C ALL COMPANIES
E-4 responded  careless disposal of smoking material  determined to  be cause .Mulch fire
extinguished prior to arrival.  jld0522

Local Option          Business name (if applicable)          Area Code     Phone Number

☐ Check This Box if
same address as
incident location.
Then skip the three
duplicate address
lines.

Mr.,Ms., Mrs.  First Name                    MI     Last Name                                      Suffix

Number          Prefix  Street or Highway                                          Street Type     Suffix

Post Office Box                    Apt./Suite/Room     City

State     Zip Code          -

☐ More people involved? Check this box and attach Supplemental Forms (NFIRS-1S) as necessary

**⌇2 Owner**    ☐ Same as person involved?
Then check this box and skip
The rest of this section.

Local Option                    Business name (if Applicable)                    Area Code     Phone Number     -

☐ Check this box if
same address as
incident location.
Then skip the three
duplicate address
lines.

Mr.,Ms., Mrs.  First Name                    MI     Last Name                                      Suffix

Number          Prefix  Street or Highway                                          Street Type     Suffix

Post Office Box                    Apt./Suite/Room     City

State     Zip Code          -

**⌇ Remarks**
Local Option
Caller Name : AT&T MOBILITY, (866) 915-5600
Caller Phone : (978) 239-4850   COID=ATTMO
mpellizzaro ; 2008/05/21 10:54:32 - Engine 4 AT EVENT MANNING IS 3
mpellizzaro ; 2008/05/21 10:54:54 - Engine 5 AT EVENT MANNING IS 3
mpellizzaro ; 2008/05/21 10:55:10 - Engine 3 AT EVENT MANNING IS 3
mpellizzaro ; 2008/05/21 11:01:38 - K2 AT EVENT MANNING IS 1
mpellizzaro ; 2008/05/21 11:01:41 - K3 AT EVENT MANNING IS 1

911 ; 2008/05/21 10:49:09
Time of Call : 2008/05/21 10:49:05
Phone Number : (978) 239-4850   COID=ATTMO
Caller Name : AT&T MOBILITY, (866) 915-5600
Street Number : 4
Street Name : DEARBORN RD
Service Municipality : PEABODY
ESN : ESN=601     MTN:978-511-7541
Longitude : -070.987794
Latitude : +042.522894
mpellizzaro ; 2008/05/21 10:56:35
POLICE REPORT SMOKE COMING FROM APARTMENT 116
mpellizzaro ; 2008/05/21 10:56:50
911 CALLER REPORT SMOKE IN AREA
mpellizzaro ; 2008/05/21 10:57:21
FA TRANSMITTED BOX 875
mpellizzaro ; 2008/05/21 10:57:58

**⌇ Authorization**

| 6887 | O'Keefe, Timothy | FF | E4 | 05 | 21 | 2008 |
|------|------------------|----|----|----|----|------|
| Officer in charge ID | Signature | Position or rank | Assignment | Month | Day | Year |

Check
box if
s Officer
n charge.

| 7220 | Perrone, Ernest A | FF | E3 | 05 | 21 | 2008 |
|------|-------------------|----|----|----|----|------|
| Member making report ID | Signature | Position or rank | Assignment | Month | Day | Year |

## B  Location*

□ Check this box to indicate that the address for this incident is provided on the Wildland Fire Module in Section B "Alternative Location Specification". Use only for Wildland fires.   Census Tract [ ] - [ ]

- [X] Street address
- [ ] Intersection
- [ ] In front of
- [ ] Rear of
- [ ] Adjacent to
- [ ] Directions

| 19 | | SILVER LEAF WAY | | | |
|---|---|---|---|---|---|
| Number/Milepost | Prefix | Street or Highway | | Street Type | Suffix |

| | PEABODY | | MA | 01960 | - |
|---|---|---|---|---|---|
| Apt./Suite/Room | City | | State | Zip Code | |

Cross street or directions, as applicable

## C  Incident Type *

| 600 | Good intent call, Other |
|---|---|
Incident Type

## D  Aid Given or Received*

1 [ ] Mutual aid received
2 [ ] Automatic aid recv.
3 [ ] Mutual aid given
4 [ ] Automatic aid given
5 [ ] Other aid given
N [X] None

| Their FDID | Their State |
|---|---|
| | |

| Their Incident Number |
|---|
| |

## E1  Date & Times

Midnight is 0000

□ Check boxes if dates are the same as Alarm Date.

ALARM always required

| | Month | Day | Year | Hr Min Sec |
|---|---|---|---|---|
| Alarm | 05 | 25 | 2008 | 20:04:19 |

ARRIVAL required, unless canceled or did not arrive

| □ Arrival * | 05 | 25 | 2008 | 20:12:33 |
|---|---|---|---|---|

CONTROLLED Optional, Except for wildland fires

□ Controlled

LAST UNIT CLEARED, required except for wildland fires

| □ Last Unit Cleared | 05 | 25 | 2008 | 20:29:12 |
|---|---|---|---|---|

## E2  Shift & Alarms

Local Option

| 3 | | |
|---|---|---|
| Shift or Platoon | Alarms | District |

## E3  Special Studies

Local Option

| | |
|---|---|
| Special Study ID# | Special Study Value |

## F  Actions Taken *

| 503 | Wash Down |
|---|---|
Primary Action Taken (1)

| | |
|---|---|
Additional Action Taken (2)

| | |
|---|---|
Additional Action Taken (3)

## G1  Resources *

□ Check this box and skip this section if an Apparatus or Personnel form is used.

| | Apparatus | Personnel |
|---|---|---|
| Suppression | | |
| EMS | | |
| Other | 0001 | |

□ Check box if resource counts include aid received resources.

## G2  Estimated Dollar Losses & Values

LOSSES: Required for all fires if known. Optional for non fires.   □ None

| Property | $ | , | 000 | , | 000 |
|---|---|---|---|---|---|
| Contents | $ | , | 000 | , | 000 |

PRE-INCIDENT VALUE: Optional

| Property | $ | , | 000 | , | 000 |
|---|---|---|---|---|---|
| Contents | $ | , | 000 | , | 000 |

## Completed Modules

- [ ] Fire-2
- [ ] Structure-3
- [ ] Civil Fire Cas.-4
- [ ] Fire Serv. Cas.-5
- [ ] EMS-6
- [ ] HazMat-7
- [ ] Wildland Fire-8
- [X] Apparatus-9
- [X] Personnel-10
- [ ] Arson-11

## H1  Casualties  [ ] None

| | Deaths | Injuries |
|---|---|---|
| Fire Service | | |
| Civilian | | |

## H2  Detector

Required for Confined Fires.

1 [ ] Detector alerted occupants
[ ] Detector did not alert them
U [ ] Unknown

## H3  Hazardous Materials Release

N [X] None
1 [ ] Natural Gas: slow leak, no evacuation or HazMat actions
2 [ ] Propane gas: <21 lb. tank (as in home BBQ grill)
3 [ ] Gasoline: vehicle fuel tank or portable container
4 [ ] Kerosene: fuel burning equipment or portable storage
5 [ ] Diesel fuel/fuel oil: vehicle fuel tank or portable
6 [ ] Household solvents: home/office spill, cleanup only
7 [ ] Motor oil: from engine or portable container
8 [ ] Paint: from paint cans totaling < 55 gallons
0 [ ] Other: Special HazMat actions required or spill > 55gal.,
    Please complete the HazMat form

## I  Mixed Use Property

- NN [ ] Not Mixed
- 10 [ ] Assembly use
- 20 [ ] Education use
- 33 [ ] Medical use
- 40 [ ] Residential use
- 51 [ ] Row of stores
- 53 [ ] Enclosed mall
- 58 [ ] Bus. & Residential
- 59 [ ] Office use
- 60 [ ] Industrial use
- 63 [ ] Military use
- 65 [ ] Farm use
- 00 [ ] Other mixed use

## J  Property Use*

### Structures

- 131 [ ] Church, place of worship
- 161 [ ] Restaurant or cafeteria
- 162 [ ] Bar/Tavern or nightclub
- 213 [ ] Elementary school or kindergarten
- 215 [ ] High school or junior high
- 241 [ ] College, adult education
- 311 [ ] Care facility for the aged
- 331 [ ] Hospital
- 341 [ ] Clinic, clinic type infirmary
- 342 [ ] Doctor/dentist office
- 361 [ ] Prison or jail, not juvenile
- 419 [ ] 1-or 2-family dwelling
- 429 [X] Multi-family dwelling
- 439 [ ] Rooming/boarding house
- 449 [ ] Commercial hotel or motel
- 459 [ ] Residential, board and care
- 464 [ ] Dormitory/barracks
- 519 [ ] Food and beverage sales
- 539 [ ] Household goods, sales, repairs
- 579 [ ] Motor vehicle/boat sales/repair
- 571 [ ] Gas or service station
- 599 [ ] Business office
- 615 [ ] Electric generating plant
- 629 [ ] Laboratory/science lab
- 700 [ ] Manufacturing plant
- 819 [ ] Livestock/poultry storage(barn)
- 882 [ ] Non-residential parking garage
- 891 [ ] Warehouse

### Outside

- 124 [ ] Playground or park
- 655 [ ] Crops or orchard
- 669 [ ] Forest (timberland)
- 807 [ ] Outdoor storage area
- 919 [ ] Dump or sanitary landfill
- 931 [ ] Open land or field
- 936 [ ] Vacant lot
- 938 [ ] Graded/care for plot of land
- 946 [ ] Lake, river, stream
- 951 [ ] Railroad right of way
- 960 [ ] Other street
- 961 [ ] Highway/divided highway
- 962 [ ] Residential street/driveway
- 981 [ ] Construction site
- 984 [ ] Industrial plant yard

Lookup and enter a Property Use code only if you have NOT checked a Property Use box:

| Property Use | 429 |
|---|---|

| Multifamily dwelling |
|---|

NFIRS-1 Revision 03/11/99

Local Option    Business name (if applicable)    Area Code    Phone Number

☐ Check This Box if
same address as
incident location.
Then skip the three
duplicate address
lines.

Mr.,Ms., Mrs.   First Name    MI    Last Name    Suffix

Number    Prefix   Street or Highway    Street Type    Suffix

Post Office Box    Apt./Suite/Room    City

State    Zip Code    -

☐ More people involved? Check this box and attach Supplemental Forms (NFIRS-1S) as necessary

## ⌇2 Owner    ☐ Same as person involved?
Then check this box and skip
The rest of this section.    Business name (if Applicable)    Area Code    -    Phone Number    -

Local Option

☐ Check this box if
same address as
incident location.
Then skip the three
duplicate address
lines.

Mr.,Ms., Mrs.   First Name    MI    Last Name    Suffix

Number    Prefix   Street or Highway    Street Type    Suffix

Post Office Box    Apt./Suite/Room    City

State    Zip Code    -

## ⌇ Remarks
Local Option

Caller Name : AT&T MOBILITY, (866) 915-5600
Caller Phone : (828) 719-8168   COID=ATTMO
admin ; 2008/05/25 20:12:33 - Engine 5 AT EVENT MANNING IS 3

911 ; 2008/05/25 20:04:19
Time of Call : 2008/05/25 20:04:14
Phone Number : (828) 719-8168   COID=ATTMO
Caller Name : AT&T MOBILITY, (866) 915-5600
Street Number : 4
Street Name : DEARBORN RD
Service Municipality : PEABODY
ESN : ESN=601    MTN:978-511-7431
Longitude : -070.992215
Latitude : +042.522519
ddean ; 2008/05/25 20:19:41
BUILDING 15
Engine 5 arrived, the fire was out , we wet it down ret.

## ⌇ Authorization

| | Officer in charge ID | | Signature | | Position or rank | | Assignment | | Month | | Day | | Year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1468 | | Kimber, James W | | FF | | E5 | | 05 | | 25 | | 2008 |

Check
box if
same
is Officer
in charge.    ☒

| | Member making report ID | | Signature | | Position or rank | | Assignment | | Month | | Day | | Year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1468 | | Kimber, James W | | FF | | E5 | | 05 | | 25 | | 2008 |

Caller Name : AT&T MOBILITY, (866) 915-5600
Caller Phone : (828) 719-8168  COID=ATTMO
admin ; 2008/05/25 20:12:33 - Engine 5 AT EVENT MANNING IS 3


911 ; 2008/05/25 20:04:19
Time of Call : 2008/05/25 20:04:14
Phone Number : (828) 719-8168  COID=ATTMO
Caller Name : AT&T MOBILITY, (866) 915-5600
Street Number : 4
Street Name : DEARBORN RD
Service Municipality : PEABODY
ESN : ESN=601      MTN:978-511-7431
Longitude : -070.992215
Latitude : +042.522519
ddean ; 2008/05/25 20:19:41
BUILDING 15
Engine 5 arrived, the fire was out , we wet it down ret.

**B  Location***

☒ Street address
☐ Intersection
☐ In front of
☐ Rear of
☐ Adjacent to
☐ Directions

Number/Milepost: 19  Prefix  Street or Highway: MAGNOLIA WAY  Street Type  Suffix

Apt./Suite/Room  City: PEABODY  State: MA  Zip Code: 01960 -

Cross street or directions, as applicable

**C  Incident Type ***

1401  Mulch Fire
Incident Type

**D  Aid Given or Received***

1 ☐ Mutual aid received
2 ☐ Automatic aid recv.
3 ☐ Mutual aid given
4 ☐ Automatic aid given
5 ☐ Other aid given
N ☒ None

Their PDID  Their State

Their Incident Number

**E1  Date & Times**    Midnight is 0000

Check boxes if dates are the same as Alarm Date.

|  | Month | Day | Year | Hr Min Sec |
|---|---|---|---|---|
| Alarm * ALARM always required | 05 | 30 | 2008 | 15:16:17 |
| ☐ Arrival * ARRIVAL required, unless canceled or did not arrive | 05 | 30 | 2008 | 15:18:25 |
| ☐ Controlled CONTROLLED Optional, Except for wildland fires |  |  |  |  |
| Last Unit Cleared LAST UNIT CLEARED, required except for wildland fires | 05 | 30 | 2008 | 15:29:04 |

**E2  Shift & Alarms**    Local Option

4  Shift or Platoon  Alarms  District

**E3  Special Studies**    Local Option

Special Study ID#  Special Study Value

**F  Actions Taken ***

11  Extinguishment by fire
Primary Action Taken (1)

Additional Action Taken (2)

Additional Action Taken (3)

**G1  Resources ***

☐ Check this box and skip this section if an Apparatus or Personnel form is used.

|  | Apparatus | Personnel |
|---|---|---|
| Suppression |  |  |
| EMS |  |  |
| Other | 0001 |  |

☐ Check box if resource counts include aid received resources.

**G2  Estimated Dollar Losses & Values**

LOSSES: Required for all fires if known. Optional for non fires.

Property $ ___,000,___000  ☐ None
Contents $ ___,000,___000  ☐ None

PRE-INCIDENT VALUE: Optional

Property $ ___,000,___000  ☐
Contents $ ___,000,___000  ☐

**Completed Modules**

☒ Fire-2
☐ Structure-3
☐ Civil Fire Cas.-4
☐ Fire Serv. Cas.-5
☐ EMS-6
☐ HazMat-7
☐ Wildland Fire-8
☒ Apparatus-9
☒ Personnel-10
☐ Arson-11

**H1* Casualties** ☐ None

|  | Deaths | Injuries |
|---|---|---|
| Fire Service |  |  |
| Civilian |  |  |

**H2  Detector**
Required for Confined Fires.

1 ☐ Detector alerted occupants
2 ☐ Detector did not alert them
U ☐ Unknown

**H3  Hazardous Materials Release**

N ☒ None
1 ☐ Natural Gas: slow leak, no evacuation or HazMat actions
2 ☐ Propane gas: <21 lb. tank (as in home BBQ grill)
3 ☐ Gasoline: vehicle fuel tank or portable container
4 ☐ Kerosene: fuel burning equipment or portable storage
5 ☐ Diesel fuel/fuel oil: vehicle fuel tank or portable
6 ☐ Household solvents: home/office spill, cleanup only
7 ☐ Motor oil: from engine or portable container
8 ☐ Paint: from paint cans totaling < 55 gallons
0 ☐ Other: Special HazMat actions required or spill > 55gal., Please complete the HazMat form

**I  Mixed Use Property**

NN ☒ Not Mixed
10 ☐ Assembly use
20 ☐ Education use
33 ☐ Medical use
40 ☐ Residential use
51 ☐ Row of stores
53 ☐ Enclosed mall
58 ☐ Bus. & Residential
59 ☐ Office use
60 ☐ Industrial use
63 ☐ Military use
65 ☐ Farm use
00 ☐ Other mixed use

**J  Property Use***    Structures

131 ☐ Church, place of worship
161 ☐ Restaurant or cafeteria
162 ☐ Bar/Tavern or nightclub
213 ☐ Elementary school or kindergarten
215 ☐ High school or junior high
241 ☐ College, adult education
311 ☐ Care facility for the aged
331 ☐ Hospital

341 ☐ Clinic, clinic type infirmary
342 ☐ Doctor/dentist office
361 ☐ Prison or jail, not juvenile
419 ☐ 1- or 2-family dwelling
429 ☐ Multi-family dwelling
439 ☐ Rooming/boarding house
449 ☐ Commercial hotel or motel
459 ☐ Residential, board and care
464 ☐ Dormitory/barracks
519 ☐ Food and beverage sales

539 ☐ Household goods, sales, repairs
579 ☐ Motor vehicle/boat sales/repair
571 ☐ Gas or service station
599 ☐ Business office
615 ☐ Electric generating plant
629 ☐ Laboratory/science lab
700 ☐ Manufacturing plant
819 ☐ Livestock/poultry storage (barn)
882 ☐ Non-residential parking garage
891 ☐ Warehouse

Outside

124 ☐ Playground or park
655 ☐ Crops or orchard
669 ☐ Forest (timberland)
807 ☐ Outdoor storage area
919 ☐ Dump or sanitary landfill
931 ☐ Open land or field

936 ☐ Vacant lot
938 ☐ Graded/care for plot of land
946 ☐ Lake, river, stream
951 ☐ Railroad right of way
960 ☐ Other street
961 ☐ Highway/divided highway
962 ☒ Residential street/driveway

981 ☐ Construction site
984 ☐ Industrial plant yard

Lookup and enter a Property Use code only if you have NOT checked a Property Use box:

Property Use  962

Residential street, road or

NFIRS-1 Revision 03/11/99

Peabody Fire dept                    09229    05/30/2008    08-0002882

Local Option                    Business name (if applicable)                    Area Code    Phone Number

Check This Box if
same address as
incident location.
Then skip the three    Mr.,Ms., Mrs.    First Name              MI      Last Name                          Suffix
duplicate address
lines.
                       Number        Prefix  Street or Highway                        Street Type    Suffix

                       Post Office Box                      Apt./Suite/Room    City

                       State    Zip Code           -

☐ More people involved? Check this box and attach Supplemental Forms (NFIRS-1S) as necessary

## 2 Owner     ☐ Same as person involved?
                  Then check this box and skip
Local Option      The rest of this section.    Business name (if Applicable)              Area Code    Phone Number

Check this box if
same address as
incident location.   Mr.,Ms., Mrs.    First Name              MI      Last Name                          Suffix
Then skip the three
duplicate address
lines.               Number        Prefix  Street or Highway                        Street Type    Suffix

                     Post Office Box                      Apt./Suite/Room    City

                     State    Zip Code           -

## Remarks
Local Option

kremington ; 2008/05/30 15:18:25 - Engine 7 AT EVENT MANNING IS 4

kremington ; 2008/05/30 15:18:06
SMALL MULCH FIRE DUE TO SMOKING MATERIALS.  Extinguished with booster line by Engine 7 crew,
manning Engine 1, at the Highlands apartment complex..

## Authorization

| 4715 | Koulas, Gregory T | CAPT | E7 | 05 | 31 | 2008 |
| Officer in charge ID | Signature | Position or rank | Assignment | Month | Day | Year |

Check
box if ☒   4715           Koulas, Gregory T    CAPT           E7         05   31   2008
same
is Officer   Member making report ID   Signature        Position or rank   Assignment   Month  Day   Year
in charge.

**Narrative:**

kremington ; 2008/05/30 15:18:25 - Engine 7 AT EVENT MANNING IS 4

kremington ; 2008/05/30 15:18:06
SMALL MULCH FIRE DUE TO SMOKING MATERIALS.   Extinguished with booster line by Engine 7 crew,
manning Engine 1, at the Highlands apartment complex..

| 09229 | | 06 | 01 | 2008 | | 08-0002914 | | 000 | ☐ Change | Basic |
| FDID | | | | | | | | | ☐ No Activity | |

## B   Location*

☐ Check this box to indicate that the address for this incident is provided on the Wildland Fire Module in Section B "Alternative Location Specification". Use only for Wildland fires.

Census Tract | ☐ – ☐

| ☒ Street address | | 10 | | OVERLOOK TRL | | | |
| ☐ Intersection | Number/Milepost | Prefix | Street or Highway | | | Street Type | Suffix |
| ☐ In front of | | | | | | | |
| ☐ Rear of | | PEABODY | | | MA | 01960 | – |
| ☐ Adjacent to | Apt./Suite/Room | City | | | State | Zip Code | |
| ☐ Directions | | | | | | | |

Cross street or directions, as applicable

## C   Incident Type *

| 1401 | Mulch Fire |
| Incident Type | |

## D   Aid Given or Received*

| 1 | Mutual aid received |
| 2 | Automatic aid recv. |
| 3 | Mutual aid given |
| 4 | Automatic aid given |
| 5 | Other aid given |
| N | None |
| ☒ | |

Their FDID | Their State

Their Incident Number

## E1   Date & Times

Midnight is 0000

Check boxes if dates are the same as Alarm Date.

ALARM always required

| | | Month | Day | Year | Hr Min Sec |
| Alarm | | 06 | 01 | 2008 | 17:57:57 |

ARRIVAL required, unless canceled or did not arrive

| Arrival * | | 06 | 01 | 2008 | 18:05:55 |

CONTROLLED Optional, Except for wildland fires

☐ Controlled

LAST UNIT CLEARED, required except for wildland fires

| ☐ Last Unit Cleared | | 06 | 01 | 2008 | 19:18:58 |

## E2   Shift & Alarm

Local Option

| 2 | | |
| Shift or Platoon | Alarms | District |

## E3   Special Studies

Local Option

| | |
| Special Study ID# | Special Study Value |

## F   Actions Taken *

| 12 | Salvage & overhaul |
| Primary Action Taken (1) | |

| | |
| Additional Action Taken (2) | |

| | |
| Additional Action Taken (3) | |

## G1   Resources *

☐ Check this box and skip this section if an Apparatus or Personnel form is used.

| | Apparatus | Personnel |
| Suppression | | |
| EMS | | |
| Other | 0001 | |

☐ Check box if resource counts include aid received resources.

## G2   Estimated Dollar Losses & Value

LOSSES: Required for all fires if known. Optional for non fires.

| Property | $ | , | 000 | , | 500 | ☐ Non |
| Contents | $ | , | 000 | , | 000 | |

PRE-INCIDENT VALUE: Optional

| Property | $ | , | 002 | , | 000 | ☐ |
| Contents | $ | , | 000 | , | 000 | ☐ |

## Completed Modules

| ☒ Fire-2 |
| ☐ Structure-3 |
| ☐ Civil Fire Cas.-4 |
| ☐ Fire Serv. Cas.-5 |
| ☐ EMS-6 |
| ☐ HazMat-7 |
| ☐ Wildland Fire-8 |
| ☒ Apparatus-9 |
| ☒ Personnel-10 |
| ☒ Arson-11 |

## H1   Casualties  ☐ None

| | Deaths | Injuries |
| Fire Service | | |
| Civilian | | |

## H2   Detector

Required for Confined Fires.

1 ☐ Detector alerted occupants

2 ☐ Detector did not alert them

U ☐ Unknown

## H3   Hazardous Materials Release

| N | ☒ None |
| 1 | ☐ Natural Gas: slow leak, no evacuation or HazMat actions |
| 2 | ☐ Propane gas: <21 lb. tank (as in home BBQ grill) |
| 3 | ☐ Gasoline: vehicle fuel tank or portable container |
| 4 | ☐ Kerosene: fuel burning equipment or portable storage |
| 5 | ☐ Diesel fuel/fuel oil: vehicle fuel tank or portable |
| 6 | ☐ Household solvents: home/office spill, cleanup only |
| 7 | ☐ Motor oil: from engine or portable container |
| 8 | ☐ Paint: from paint cans totaling < 55 gallons |
| 0 | ☐ Other: Special HazMat actions required or spill > 55gal.. Please complete the HazMat form |

## I   Mixed Use Property

| NN | ☐ Not Mixed |
| 10 | ☐ Assembly use |
| 20 | ☐ Education use |
| 33 | ☐ Medical use |
| 40 | ☐ Residential use |
| 51 | ☐ Row of stores |
| 53 | ☐ Enclosed mall |
| 58 | ☐ Bus. & Residential |
| 59 | ☐ Office use |
| 60 | ☐ Industrial use |
| 63 | ☐ Military use |
| 65 | ☐ Farm use |
| 00 | ☐ Other mixed use |

## J   Property Use*   Structures

| 131 | ☐ Church, place of worship |
| 161 | ☐ Restaurant or cafeteria |
| 162 | ☐ Bar/Tavern or nightclub |
| 213 | ☐ Elementary school or kindergarten |
| 215 | ☐ High school or junior high |
| 241 | ☐ College, adult education |
| 311 | ☐ Care facility for the aged |
| 331 | ☐ Hospital |

| 341 | ☐ Clinic, clinic type infirmary |
| 342 | ☐ Doctor/dentist office |
| 361 | ☐ Prison or jail, not juvenile |
| 419 | ☐ 1-or 2-family dwelling |
| 429 | ☒ Multi-family dwelling |
| 439 | ☐ Rooming/boarding house |
| 449 | ☐ Commercial hotel or motel |
| 459 | ☐ Residential, board and care |
| 464 | ☐ Dormitory/barracks |
| 519 | ☐ Food and beverage sales |

| 539 | ☐ Household goods, sales, repairs |
| 579 | ☐ Motor vehicle/boat sales/repair |
| 571 | ☐ Gas or service station |
| 599 | ☐ Business office |
| 615 | ☐ Electric generating plant |
| 629 | ☐ Laboratory/science lab |
| 700 | ☐ Manufacturing plant |
| 819 | ☐ Livestock/poultry storage (barn) |
| 882 | ☐ Non-residential parking garage |
| 891 | ☐ Warehouse |

### Outside

| 124 | ☐ Playground or park |
| 655 | ☐ Crops or orchard |
| 669 | ☐ Forest (timberland) |
| 807 | ☐ Outdoor storage area |
| 919 | ☐ Dump or sanitary landfill |
| 931 | ☐ Open land or field |

| 936 | ☐ Vacant lot |
| 938 | ☐ Graded/care for plot of land |
| 946 | ☐ Lake, river, stream |
| 951 | ☐ Railroad right of way |
| 960 | ☐ Other street |
| 961 | ☐ Highway/divided highway |
| 962 | ☐ Residential street/driveway |

| 981 | ☐ Construction site |
| 984 | ☐ Industrial plant yard |

Lookup and enter a Property Use code only if you have NOT checked a Property Use box:

Property Use | 429

Multifamily dwelling

NFIRS-1 Revision 03/11/99

**Narrative:**

cad ; 2008/06/01 18:05:55 - Engine 5 AT EVENT MANNING IS 3

cad ; 2008/06/01 18:00:48
BRUSH FIRE
cad ; 2008/06/01 19:01:06
K-3 ON SCENE
E-5 crew investigated  a mulch fire that had been extinguished. While investigating we found electrical wires to the AC unit had been burned through. We also overhauled the area pulling off some siding and insulation to check for extension.. We requested K3 to the scene after several AC units with burnt wires. The mulch fire location was behind Apt. 1019 of Overlook Trail.    MCM II

# EXHIBIT C

INVENTORY FORM

PLEASE PRINT CLEARLY

INSURED: CRYSTAL CAISSIE    LOSS DATE: 5/29/2008

CLAIMS REP.    Phone#

FILE #:

POLICY #: MMA750113872

**TO BE COMPLETED BY THE INSURED**

| ITEM NO. | Qty | Description of Property | Mfg./Brand Name & Serial/Model # | Place of Purchase or obtained from | Date of Purchase or age | Replacement or Repair Cost | Document/Receipts Available |
|---|---|---|---|---|---|---|---|
| 1 | 2 | Dog gate's | | Petco | LNR | $50.00 | |
| 2 | 8 | glass picture coasters | | Bed Bath & Beyond | LNR | 25.00 | |
| 3 | 1 | dec bowel | | target | LNR | 25.00 | |
| 4 | 1 | table cloth | | bed bath beyond | LNR | 210.00 | |
| 5 | 8 | napkin rings | | bed bath beyond | LNR | 56.00 | |
| 6 | 8 | matching cloth napkins | | bed bath & beyond | LNR | 32.00 | |
| 7 | 1 | area rug | | Home goods | LNR | 200.00 | |
| 8 | 1 | Keychain holder | | | LNR | 15.00 | |
| 9 | 1 | dec wreath | | | LNR | 25.00 | |
| 10 | 1 | Coat rack umbrella holder | | | LNR | 60.00 | |
| 11 | 1 | various x mass dec. | | | LNR | 700.00 | |
| 12 | 1 | various thanksgiving dec. | | | LNR | 200.00 | |
| 13 | 1 | various valentine | | | LNR | 200.00 | |

1 Pure breed Pomeranian 1600⁰⁰ NR
1 Pure breed Toypoodle 1400ᴺᴰ LNR

2 House cats 10yr and have their mic. costs burke vet-bills shots medivine 2000⁰⁰/(1000.⁰⁰ per cat)

MIC vet bills for each dog 500ᵧ, flea tick prevention 1600.⁰⁰

INVENTORY FORM

PLEASE PRINT CLEARLY

| INSURED: | CRYSTAL CAISSIE | LOSS DATE: | 5/29/2008 |
| CLAIMS REP. | KIM MAGDALENO | Phone# | N/A |

FILE #: LM00042420
POLICY #: LMMA750113872

TO BE COMPLETED BY THE INSURED

| ITEM NO. | Qty | Description of Property | Mfg./Brand Name & Serial/Model # | Place of Purchase or obtained from | Date of Purchase or age | Replacement or Repair Cost | Document/ Receipts Available | ADJUSTERS USE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Adjuster Replace- ment | Flat Tax | Flat Deprec. Cost | Am't Dep. | Dep. % | Dep. # | ACV | Expense Allowed Avail'l |
| 14 | 1 | VARIOUS Toy under | | | 4 yr | 100.00 | | | | | | | | | |
| 15 | 1 | various Halloween dec | | | 4yr | 200.00 | | | | | | | | | |
| 16 | 1 | Spring/summer decorations | | | 4 yr | 500.00 | | | | | | | | | |
| 17 | 1 | Desk | | Jordans Furniture | 2 yr | 350.00 | ✓ | | | | | | | | |
| 18 | 1 | Dresser | | | 4 yr | 797.00 | ✓ | | | | | | | | |
| 19 | 1 | Mirror | | | 4yr | 193.00 | ✓ | | | | | | | | |
| 20 | 1 | Footboard | | | 4 yr | see headboard | ✓ | | | | | | | | |
| 21 | 1 | head board | | | 4 yr | 597.00 | ✓ | | | | | | | | |
| 22 | 2 | End tables | Jordans | | 4 yr | 1097.00 | ✓ | | | | | | | | |
| 23 | 2 | Lamps & Shades | Target | | 1 mo. | 30.00 | | | | | | | | | |
| 24 | 1 | Mattress | Sleepy's | | 2 yr | 1000.00 | | | | | | | | | |
| 25 | 1 | Box Spring | | | | | Already submitted ✓ | | | | | | | | |
| 26 | 1 | Add boots ⇒ | Aldo ⇒ | | 2yr | 149.99 | | | | | | | | | |

**INVENTORY FORM**

PLEASE PRINT CLEA...

| INSURED: | CRYSTAL CAISSIE | LOSS DATE: | 5/29/2008 |
| CLAIMS REP. | KIM MAGDALENO | Phone# | N/A |

FILE #: LM00042420
POLICY #: LMMA750113872

**TO BE COMPLETED BY THE INSURED**

| ITEM NO. | Qty | Description of Property | Mfg./Brand Name & Serial/Model # | Place of Purchase or obtained from | Date of Purchase or age | Replacement or Repair Cost | Document, Receipts Available | ADJUSTERS USE (Adjusted Replacement Amt / Plus Tax / Total Replacement Cost / % Dep / Amt Dep / Replaced Amount) | QTY |
|---|---|---|---|---|---|---|---|---|---|
| 27 | 1 | boots | | Aldo | 14yr | 156.00 | | | |
| 28 | 1 | boots | | Nine West | 2 yr | 100.00 | | | |
| 29 | 1 | boots | | TJMAX | 2 yr | 79.99 | | | |
| 30 | 2 | Pairs of (shoes) Summer heels | | Various | 1 mo - 1yr | 1000,00 | | | |
| 31 | 4 | dressy Summer heels | | Various | 2 yr | 360.00 | | | |
| 32 | 4 | Pair of Sneakers | | Loot Footlocker | 1 mo - 2yr | 400.00 | | | |
| 33 | 1 | roomy & Bow tie Pocketbook | | | 1 yr | 360.00 | | | |
| 34 | 1 | Coach Pocketbook | | Coach | 1 yr | 260.00 | | | |
| 35 | 1 | " | | " | 2 yr | 180.00 | | | |
| 36 | 1 | " | | " | 2 yr. | 890.00 | | | |
| 37 | 1 | " | | " | 1 yr | 360.00 | | | |
| 38 | 1 | beachbag | | Victoria Sec. | 1 yr | 25.00 | | | |
| 39 | 4 | beach towels | | | | 100.00 | | | |

INVENTORY FORM

**PLEASE PRINT CLEARLY**

INSURED: CRYSTAL CAISSIE   LOSS DATE: 5/29/2008   FILE #: LM00042420

CLAIMS REP. KIM MAGDALENO   Phone# _N/A_   POLICY #: LMMA750113872

| ITEM NO. | Qty | Description of Property | Mfg./Brand Name & Serial/Model # | Place of Purchase or obtained from | Date of Purchase or age | Replacement or Repair Cost | Document / Receipt Available | Adjuster Replace with | Plus Tax | Total Replacement Cost | % Dep | Am't Dep | ACV | Approval Amount | Replacement This |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 40 | VARIOUS Winter Sweaters | various | | 1-4yr | 2400.⁰⁰ | | | | | | | | | |
| 15 | 60 | VARIOUS Summer Shirts Ttanktops | various | | 1-4yr | 2400.⁰⁰ | | | | | | | | | |
| 16 | 7 | Skirts | various | | 1-4yr | $250.⁰⁰ | | | | | | | | | |
| 17 | | VARIOUS goggle Ski gear | | | 3yr | 200.⁰⁰ | | | | | | | | | |
| 18 | 1 | TOTAL FABRIC Protection cost ON ALL FURNITURE | | | 2-4yr | 399.⁰⁰ | ready submitted | | | | | | | | |
| 19 | | | | | | | | | | | | | | | |
| 20 | 1 | Pocket book Christian Dior | uppy Christian Dior | | 24 | 598.⁰⁰ | | | | | | | | | |
| 21 | 3 | Perfumes uppy | | | 6mo | 270 | | | | | | | | | |
| 22 | | Mac Product makeup various | | | 6mo-3yr | 500.⁰⁰ | | | | | | | | | |
| 23 | 1 | bedroom Larok Painting | Bed Bath Beyond | | 6mo | 399.⁰⁰ | | | | | | | | | |
| 24 | 1 | Multiple small bedroom rug | Various | | 1-2yr | 200.⁰⁰ | | | | | | | | | |
| 25 | | bedroom baskets | Target | | N/R | 125.⁰⁰ | | | | | | | | | |
| 26 | 1 | 1986 Harley Davidson | | | | $7,500 | | | | | | | | | |

FXRS Lowrider

1 LARGE Toolbox Snap-on with tools 5,000.⁰⁰

INVENTORY FORM

PLEASE PRINT CLEA...

| INSURED: | CRYSTAL CAISSIE | LOSS DATE: | 5/29/2008 | FILE #: | LM00042420 |
| CLAIMS REP. | KIM MAGDALENO | Phone# | N/A | POLICY #: | LMMA750113872 |

TO BE COMPLETED BY THE INSURED

| ITEM NO. | Qty | Description of Property | Mfg./Brand Name & Serial/Model # | Place of Purchase or obtained from | Date of Purchase or age | Replacement or Repair Cost | Document Receipts Available |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Vallet Key | Nissan | | 4 YR | 95.38 | ✓ |
| 2 | 1 | Master Key | " " | | " " | 142.81 | ✓ |
| 3 | 1 | Switch-Ass-y-SW | " | | " | 101.47 / 10.44 | ✓ |
| 4 | 1 | Tonneau cover | " | | " | 470.61 | ✓ |
| 5 | 10 | Jewln Sets | Work-n-gear | | 1-4yr | 610.00 | |
| 6 | | various Scrapbooking supplies | Michaels craft stores | | 1 month | 2000.00 | |
| 7 | 1 | xbox 360 w/ garmin nuvi 400 | Best Buy | | 4yr | 1,054.17 | ✓ reciepts submitted |
| 8 | 1 | Samsung 46" Flat Panel HDTV | Cisco | | 2-yr | 1,200.00 | |
| 9 | | | | | | | |
| 10 | | various underwear Bras etc... | Victorias secret | | 1-2yr | 1,200.00 | |
| 11 | | various socks stockings | various | | 1-2yr | 200.00 | |
| 12 | 10 | swimsuits | Victorias secret | | 1-2yr | 600.00 | |
| 13 | 14 | Pair of Jeans | Nordstorm BeBe Express True Relgion Seven | | 1-3yr | 3000.00 | |

ADJUSTERS USE



**D'Angelo & Hashem, LLC**
ATTORNEYS & COUNSELORS AT LAW

6 Beacon Street
Suite 505
Boston, MA 02108

Tel: 617-624-9777
Fax: 617-624-0999

July 2, 2009

Simpson Financing Limited Partnership
d/b/a Highlands at Dearborn
8110 East Union Avenue, Ste. 200
Denver, CO 80237

QRS Financing, LLC
8110 East Union Avenue, Ste. 200
Denver, CO 80237

Simpson Housing LLLP
8110 East Union Avenue, Ste. 200
Denver, CO 80237

Colomba, LLC
8110 East Union Avenue, Ste. 200
Denver, CO 80237

SHLP Holdings, LLLP
8110 East Union Avenue, Ste. 200
Denver, CO 80237

Paloma, LLC
3201 South Tarmac Drive, Suite 200
Denver, CO 80231

First American Property & Casualty
Insurance Company
114 East Fifth Street
Santa Ana, CA 92701

Multifamily Community Insurance
Agency, Inc.
12395 First American Way
Poway, CA 92065

RE:  **Our clients/your Tenants/Insureds:**   **Tayna Peppe and Robert Pulisciano, a minor**

   **Property location:**   **Highlands at Dearborn**
   **19 Dearborn Road**
   **Peabody, MA 01960**

   **Date of Loss:**   **May 29, 2008**

## NOTICE OF CLAIMS
## DEMAND PURSUANT TO M.G.L. CHAPTER 93A

Dear Sir or Madam;

This office was retained by Tanya Peppe for her and her son, Robert Pulsciano's claims for property damage as a result of the fire which occurred on May 29, 2008, at the Highlands at Dearborn apartment complex, building 8, in Peabody, Massachusetts.  This is a formal demand letter submitted pursuant to Chapter 93A section 9 of the General Laws of the Commonwealth of Massachusetts.  As such you will have thirty (30) days to respond with an offer to settle this matter upon receipt of this letter.   In addition to the foregoing, you are hereby given notice of claims for negligence, negligent infliction of emotional distress, breach of contract, breach of express and implied warranties of habitability, and interference with quiet enjoyment.

## INTRODUCTION

On May 29, 2008, Simpson Financing Limited Partnership was the record owner of the property located at 8 Ashford Trail, in Peabody, Massachusetts, part of the apartment complex known as the "Highlands at Dearborn." It is part of the property purchased from BVT/Fairfield Peabody Associates by deed of August 17, 2007.

Simpson Financing Limited Partnership d/b/a Highlands at Dearborn is controlled by QRS Financing LLC.  QRS Financing, LLC, is controlled by Simpson Housing LLLP.  Simpson Housing LLLP is controlled by Colomba, LLC.  Colomba, LLC, is controlled by SHLP Holdings LLLP.  SHLP Holdings LLLP is controlled by Paloma LLC.  Paloma LLC is controlled by Donald A. Simpson.  By virtue of their interoperation, any liability of Simpson Financing Limited Partnership extends through each entity through and including Paloma, LLC.  Notice and demand are, therefore, made to all such entities.  Unless referenced by individually, the foregoing shall be collectively referred to as "Simpson".

This Notice and demand is sent to you on behalf of Tanya Peppe and her son Robert Pulisciano (hereinafter "Claimants") for the recovery of their losses sustained in the fire which occurred on May 29, 2008, at the Highlands at Dearborn apartment complex. As a result of the negligence of Simpson in its failure to remove a known fire hazard, bark mulch that was ignited on previous occasions, the Claimants suffered substantial losses of personal property when the building located at 8 Ashford Trail caught fire and burned to the ground. The Claimants is aggrieved by virtue of the negligence and practices in violation of applicable statutory law and established precedent.  Claimants, Tanya Peppe and Robert Pulisanco, have sustained emotional and financial losses as set forth below.

## FACTS

### A.  Lease Signing and Sale of Insurance

On March 25, 2008, the Claimant, Tanya Peppe, entered into her lease with Simpson in Peabody Massachusetts.  Her lease commenced on March 26, 2008, and was to be for a term of one year.  Her son, Claimant Robert Pulisciano was identified on the lease as a

resident of the apartment. Claimant Tanya peppe rented the apartment known as 837 at 8 Ashford Trail, Peabody, Massachusetts.

The Claimant, Tanya Peppe, purchased renter's insurance through an employee of Simpson when she entered into her initial lease. The sale of this policy was mandated by Simpson. The policy was produced by First American Property & Casualty Insurance Company and offered by Multifamily Community Insurance Agency, Inc. The policy was sold by a leasing agent of Simpson, who was not a licensed insurance agent.

Under duress and against public policy, the Claimant, Tanya Peppe was told that she would not be leased an apartment unless she chose one of the two options for insurance policies, neither of which was explained to her. The amounts of coverage for each policy were never disclosed. The types of coverage were never disclosed. Claimant was not told that she could purchase an independent policy. Claimant was not permitted to seek adequate coverage. As a result of the pressure sales tactics exerted upon her, Claimant chose the less expensive of the two policies and signed her lease. At the time she signed the lease, the Claimant was led to believe she had purchased enough insurance to cover her potential property losses.

B. The Fire

There were many fires at the Highlands at Dearborn complex preceding the fire on May 29, 2008. There were fires on May 21, 2007, January 15, 2008, and February 19, 2008. Additionally, there were fires at the complex at various buildings in the days immediately preceding and the days immediately following the fire on May 29, 2008. Those fires occurred on May 19, 2008, May 21, 2008, May 25, 2008, May 30, 2008, and June 1, 2008. See **Exhibit B.** (individual reports). Careless disposal of smoking materials caused dry wooden mulch to catch fire on those dates. The mulch surrounding the buildings at the Highlands at Dearborn created an extremely hazardous condition due to the mulches' flammability characteristics.

Simpson was aware of the serious fire hazard the mulch posed. However, in response to these fires, no warnings were given nor were steps taken to remove the mulch. Rather, residents were asked to dispose of smoking materials to avoid a displeasing aesthetic. Yet, as evidenced on page 4 of the Fire Investigation Summary Report for the fire which occurred on May 29, 2008, there was evidence produced by the Highlands that they were aware of the potential hazards of the careless disposal of smoking materials combined with the type of mulch that was present on the premises created a fire hazard.

At approximately 3:30 p.m. on Thursday, May 29, 2008, Highlands at Dearborn, 8 Ashford Trail, also known as Highlands at Dearborn Building 8, caught fire and was destroyed in a four-alarm blaze. Tanya Peppe and her son were tenants in the Highlands at Dearborn Building 8. The fire that raged through 8 Ashford Trail in Peabody, Massachusetts was started by the careless disposal of smoking materials. See **Exhibit A** (fire investigation report). In a little over hour the fire consumed Building 8 burning it to

the ground.  The fire was so intense that it caused damage to surrounding buildings in the complex.  Tanya Peppe, her son Robert, and many other tenants watched in horror and saw everything they owned burn.  Their beloved pets, all of their personal belongings, pictures of family, friends and loved ones, souvenirs, memories, pets, and precious gifts destroyed.

The Claimant and her son lost of all of their personal property that was in the apartment at the time of the fire.  See **Exhibit C.** (personal property list).  The Claimant has replaced a few items that were lost in the fire.  However, she and her son can never replace the bond they had with her two beloved cats and can never replace the lost mementos from their life experience, photographs, gifts and heirlooms.

Tanya Peppe and her son were not at home at the time the fire started.  They arrived back at the Highlands soon after the fire started.  Ms. Peppe had received phone calls telling her that the building was on fire.  She knew soon after she saw the speed at which the fire was consuming the building that most of the pets that were in the building and were not rescued would ultimately perish.  Tanya and Robert stood and watched the fire destroy the building and everything in it, including their two beloved cats.

Claimant was told by agents of Simpson that there were items saved and that they would be placed in a secure area on site.  There were very few items salvaged from the fire, and the site which held the items was never secured against theft.  None of Claimant's possessions were found.  She was forced to revisit the site of the destruction and relive the fire for nothing, compounding the emotional toll.

The fire has greatly affected both Tanya and Robert.  Robert was emotionally devastated by the fire.  He has continually had nightmares about smoke and fire and has had severe separation anxiety and does not want to be left alone at all.  Both the Tanya and Robert regularly drive by the area where building 8 once stood and nearly every time they drive by the area Robert mentions the fire and that it is a "bad place."  Tanya has had do come to terms not only with the emotional impact that the fire has had on her, but also the emotional impact that it has had on her son.

Subsequent to the fire, the Massachusetts State Police Fire and Explosion Investigation Unit, Office of the State Fire Marshall, conducted an investigation into the fire to determine its cause.  The Fire Investigation Report issued by that office states that the origin of the fire was in the area next to the rear center tower of the building.  The cause of the fire was determined to be the careless disposal of smoking materials in an area where there was approximately a one inch layer of dry bark mulch.

When the Claimant, Tanya Peppe, attempted to contact the First American Property and Casualty Insurance Company, she was informed that her policy covered only twenty five thousand dollars ($25,000.00) in liability coverage, and no contents coverage as she was led to believe by the agents of Simpson.  This information was in contravention of what

the employees of the Highlands at Dearborn and Simpson Property Management led the Claimant to believe when she was forced to purchase the policy.

The fire displaced Tanya Peppe and Robert Pulisciano.  Financially and emotionally devastated, they were forced to move into a hotel for two weeks.  Ms. Peppe lost approximately one month from work as a result of the fire. The Claimants have suffered emotionally as a result of the devastation.

## LIABILITY

  A.  <u>Negligence and Negligent Infliction of Emotional Distress</u>

Simpson had a duty to Claimants to maintain the premises in a safe condition.  Simpson knew that there were unsafe conditions on the property, specifically in the form of the dry mulch which caught fire repeatedly. It had notice and an opportunity to cure.  Simpson neglected, failed and or refused to ameliorate the hazardous condition.  Aware that the flammability of the mulch used around the buildings was a dangerous condition, Simpson should have taken steps to remedy the situation.  The failure to do so constitutes a breach of duty and negligence on the part of the Simpson.   Simpson is responsible for the Claimants' property damage that was proximately caused by its negligence.  And, as set forth in <u>Sullivan v. Boston Gas Co.</u>, 414 Mass. 129, 134 (1993), Simpson is responsible for the emotional distress it inflicted on Claimant by its negligence.

  B.  <u>Breach of Contract, Breach of Express and Implied Warrants of Habitability, Interference with Quiet Enjoyment</u>

By virtue of the destruction of the premises by fire, caused by the negligence as previously set forth, Simpson has violated the terms of the lease, in breach of contract. The lease guarantees that Claimant will be able to occupy the leased premises. See, Apartment Lease Contract, Paragraph 1. **See <u>Exhibit D.</u>** That is now impossible because of the actions and omissions of Simpson. Failure to provide the premises constitutes a material breach of that contract.  Simpson is responsible for all damages flowing from that breach, including but not limited to, property damage and emotional distress.

Simpson has further breached the implied warranty of habitability as all parts of the premises are in material violation of the minimum standards of habitability as expressed in the State Sanitary Code, the State Building Code and other regulations. See, <u>Boston Hous. Auth. v. Hemingway</u>, 363 Mass. 184 (1973).  The destruction by fire has rendered the premises uninhabitable.  Simpson is responsible for all damages flowing from that breach, including but not limited to, property damage and emotional distress.

Massachusetts law states that any lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant shall be liable for actual and consequential damages or three month's rent, which ever is greater. See, Mass. Gen. Laws, ch. 186, sec. 14.  Here, by failing to remedy the hazard which

ultimately caused the fire, Simpson interfered with the quiet enjoyment of Claimants. Simpson failed to act reasonably, so the natural and probable consequence was interruption of Claimants' rights. Simpson is responsible for all damages flowing from that breach, including but not limited to, property damage and emotional distress, as well as attorneys' fees. See, Simon v. Solomon, 385 Mass. 91 (1982).

C.    Violations of Massachusetts Insurance Law

Simpson sold or attempted to sell property and casualty insurance directly to the Claimant, Tanya Peppe, through their leasing agents, not through a licensed insurance agent. Only licensed agents are permitted to sell such insurance. See, Mass.Gen.Laws, ch 175, sec. 162I. Simpson collected the insurance premiums, despite selling such insurance, in contravention of Mass.Gen.Laws, ch. 175, sec. 164. See, Lease Addendum, Liability Insurance Required of Resident, Paragraph 9.

Simpson, First American Property and Casualty Insurance Company (hereinafter "First American") and Multifamily Community Insurance Agency, Inc. (hereinafter "Multifamily"), were required to use a standard application form that would have helped Claimant, Tanya Peppe, assess insurance needs. See, Mass.Gen.Laws, ch. 175, sec. 98. Simpson falsely represented that the specific insurance policy sold was a requirement of the lease and that only two options were possible. Under Massachusetts law, a landlord is not permitted to require a tenant to enter into any agreement, including an insurance agreement, the effect of which is to indemnify the landlord. Mass.Gen.Laws, ch. 186, sec. 15. Such constituted misrepresentation, reasonably relied upon by Claimant. It also constitutes a criminal offense of obtaining payments of premiums by fraudulent representation. See, Mass.Gen.Laws, ch. 175, sec. 170. Such further constitutes unlawful and unlicensed insurance advice, in violation of Mass.Gen.Laws, ch. 175, sec. 177A-177D, as well as criminal misrepresentation by the advisor, in violation of Mass.Gen.Laws, ch 175, sec. 181, and an unfair trade practice, in violation of Mass.Gen.Laws, ch. 176D, sec. 3(10). Additionally, Claimant was never given the insurance contract required by Mass.Gen.Laws, ch. 175, sec. 99, which failure prevented Claimant from knowing precisely what was purchased and on what terms.

Collectively, the foregoing violations of chapter 175 are deemed unlawful. See, Mass.Gen.Laws, ch. 175, sec. 3 & 194. Moreover, Simpson is directly liable for the contracts of insurance sold. See, Mass.Gen.Laws, ch. 175, sec. 171. Because Claimant reasonably believed that she was purchasing a contract sufficient to cover her property losses in the event of fire, Simpson is fully liable for her property losses. First American and Multifamily, in permitting the sale of what was deemed to be sufficient coverage shall be held to that standard, per Mass.Gen.Laws, ch. 175, sec. 193.

Under Massachusetts law, common law misrepresentation claims provide the basis for liability under the Massachusetts deceptive trade practices statute. Damon v. Sun Co., Inc., 87 F.3d 1467 (1996). In this instance, the agents of Simpson misrepresented the insurance policy which was sold to the Claimant, leading her to believe that she had

coverage for property, when in fact, she did not.  Such misrepresentation was of a material fact.  Whether the leasing agent intentionally or negligently misrepresented the coverage which the Claimant was purchasing, such a misrepresentation is a violation of Mass.Gen.Laws, ch. 93A, §2(a).  See Glickman v. Brown, 21 Mass.App.Ct. 229 (1985).  In addition, the aforementioned violation of Mass.Gen.Laws, ch. 175, sec. 181, constitutes *per se* unfair and deceptive practice.  See, Mass.Gen.Laws, ch. 176D, sec. 3(12).

Additionally, conduct may be "deceptive if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted."  Aspinall v. Philip Morris Cos., 442 Mass. 381 (2004).  In this case, had the Claimant had the insurance policy fully explained to her she would have either purchased additional insurance subsequent to entering the lease to fully insure her belongings, or would have obtained a policy from a different insurer had she been informed that such a policy would fulfill the requirements of the lease.  It is notable that the Lease Addendum, Liability Insurance Required of Resident form does not even identify First American or Multifamily, but rather identifies RegistryTLC, offered and produced by Multifamily and First American, respectively, as the insurer.  Simpson's, First American's, Multifamily's failure to make proper explanations constituted unfair and deceptive practices and were a willful violation of Mass.Gen.Laws, ch. 93A.  See Lodie v. Anton's Cleaners, 1993 Mass. App. Div. 29 (1993).

## DAMAGES

### Property Damage

The Claimant, Tanya Peppe, suffered a substantial loss, all of her personal property.  The property that was destroyed in the fire had an approximate value of thirty two thousand three hundred five dollars and eighty three cents ($32,305.83).

**Ms. Peppe must be compensated for her damaged property related to this fire.**

The Claimant, Robert Pulisciano, suffered a substantial loss, all of his personal property.  The property that was destroyed in the fire had an approximate value of nine thousand forty nine dollars and seventy four cents ($9049.74).

**Mr. Pulisciano must be compensated for his damaged property related to this fire.**

The Claimant was forced to miss time from work as a result of the fire.  The value of her lost wages is approximately two thousand four hundred dollars ($2,400.00).

**Ms. Peppe must be compensated for her lost wages related to this fire.**

The Claimants suffered emotionally as a result of the devastation caused by the fire. Although it is impossible to attach a monetary figure to the losses, the trauma of the fire itself should entitle Claimants to one hundred thousand dollars ($100,000.00) each.  The loss of the cats should entitle claimants to fifty thousand dollars ($50,000.00) per pet each.  The demand for her emotional pain and suffering is three hundred thousand dollars ($400,000.00).

**Ms. Peppe and Mr. Pulisciano must be compensated for her pain and suffering related to this fire.**

### DEMAND

In consequence of the aforementioned negligence, breaches, violations of insurance law and by the violation of Massachusetts General Laws, chapter 93A, demand for compensation in the amount of two three hundred forty three seven hundred fifty five dollars and fifty seven cents ($443,755.57) is hereby made to satisfy all of the claims of Tanya Peppe and Robert Pulisciano. Such demand is confidential settlement communication and shall not be admissible as evidence.

The offer to settle this matter shall remain open for thirty (30) days.  In the event settlement is not reached, the Claimants reserve the rights to pursue their claims to their fullest extent, including double or treble damages, costs and attorney's fees, should such be applicable.

### RESPONSE TO DEMAND

Please be advised that if this demand is not accepted within thirty (30) days, the time period mandated by the statute, my client Tanya Peppe and Robert Puliscianowill pursue all legal remedies available to them, including the recovery of multiple damages, attorney's fees and costs under the Massachusetts General Laws Chapter 93A section 9.  I respectfully anticipate your timely response.

Sincerely,

Stephen L. D'Angelo
Counsel for Tanya Peppe and
Robert Pulisciano