**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **GAYLE GARDNER, TANYA PULISCIANO, CRYSTAL CAISSIE, and LOUISE FELTEAU,** | |
| **Plaintiffs,** | **Civil Action Nos. 09-11806-FDS** |
| **v.** | |
| **SIMPSON FINANCING LIMITED PARTNERSHIP,** | |
| **Defendant.** | |

**MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

**SAYLOR, J.**

In May 2008, the apartment building in which plaintiffs Gayle Gardner, Crystal Caissie, Louise Felteau, and Tanya Pulisciano lived was destroyed by fire. They brought suit against their landlord, defendant Simpson Financing Limited Partnership. The case was tried in April 2013, and the jury awarded each plaintiff compensatory damages for loss of property and emotional distress.

Plaintiffs now move for attorneys' fees and expenses, which are recoverable for breach of the covenant of quiet enjoyment. *See* Mass. Gen. Laws ch. 186, § 14. Although the case was relatively simple—the trial testimony lasted only three half-days, no expert witnesses were called, and plaintiffs' counsel's closing argument was only seven minutes long—plaintiffs' counsel now seek nearly one million dollars in legal fees. Despite the magnitude of the request, they have submitted no contemporaneous time records, and the affidavits they did submit are

lacking in adequate detail. Although the Court has the discretion under the circumstances to deny an award of attorneys' fees altogether, it will instead award a deeply discounted amount, representing what appears to be a reasonable fee under the circumstances.

## I. Background

In 2009, Gayle Gardner, Tanya Pulisciano, Crystal Caissie, Louise Felteau, and others brought separate actions in the Massachusetts Housing Court, Northeast Division, against Simpson Financing Limited Partnership, as well as First American Property & Casualty Insurance Company and Multifamily Community Insurance Agency, Inc., alleging negligence, negligent infliction of emotional distress, intentional and negligent misrepresentation, breach of contract, breach of the covenant of quiet enjoyment, nuisance, and violation of Mass. Gen. Laws ch. 93A. Defendants removed the actions to this Court on the basis of diversity of citizenship, and the actions were consolidated.

On March 30, 2012, this Court granted summary judgment in favor of the insurance company defendants. The Court also granted partial summary judgment in favor of Simpson, with only the claims for negligence, negligent infliction of emotional distress, and breach of the covenant of quiet enjoyment surviving.

A jury trial was held from April 1 through April 5, 2013. The jury found for plaintiffs and awarded compensatory damages and emotional distress damages. The Court denied defendant's motion for an order of judgment as a matter of law but issued an order of remittitur, eventually entering a judgment of $100,000 as to each plaintiff in emotional distress damages. On August 28, 2013, plaintiffs moved for an award of attorneys' fees, expenses, and costs; the initial request included no supporting documentation. A supplemental memorandum in support

was filed on September 26, 2013, accompanied by affidavits of five attorneys setting forth their claimed fees. Plaintiffs seek $991,007.00 in fees and $11,513.54 in costs.

## II. Analysis

Mass. Gen. Laws ch. 186 § 14 provides for an award of "the costs of the action, including a reasonable attorney's fee," and costs to parties that prevail on a claim for breach of the covenant of quiet enjoyment. *See Manzaro v. McCann*, 401 Mass. 880, 885 (1988). The district court has "broad" discretion to determine what reasonable fees and costs should be awarded. *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 14 (1st Cir. 1988). The prevailing party has the burden of substantiating the requested fees and costs. *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011).

Generally, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees. *Tennessee Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *Spooner*, 644 F.3d at 67-69. This involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). After arriving at the lodestar, a court may adjust the amount upward or downward based on a number of factors. *Spooner*, 644 F.3d at 68.

### A. Hours

A district court need not accept the hours and rates offered by the prevailing party. Indeed, the attorneys' records should be "scrutinized with care." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984). "The court has a right—indeed, a duty—to see whether counsel substantially exceeded the bounds of reasonable effort." *Metro. Dist. Comm'n*, 847 F.2d

at 17 (internal quotation omitted). The court may deduct or discount hours that were "unreasonably, unnecessarily, or inefficiently" spent on the case or that were spent on failed claims. *Torres-Rivera*, 524 F.3d at 336. The court may also disallow or discount requests where the records are "too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like." *Id.* And where attorneys have failed to keep contemporaneous records, courts have applied a deep discount to the numbers of hours awarded, and in extreme cases, have denied fees altogether. *See, e.g.*, *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929, 966 (C.D. Cal. 2010) (applying 25% discount to reconstructed hours); *S.E.C. v. Smith*, 798 F. Supp. 2d 412, 439-40 (N.D.N.Y. 2011) *aff'd in part, dismissed in part on other grounds*, 710 F.3d 87 (2d Cir. 2013) (deducting 20% of reconstructed hours where alternative records supported attorneys' petition for fees). *Cf. Grendel's Den, Inc.*, 749 F.2d at 952 ("[H]enceforth, in cases involving fee applications for services rendered after the date of this opinion, the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance.").

In this case, plaintiffs' counsel's request for fees is both woefully undocumented and grossly inflated. Plaintiffs' counsel submitted five affidavits of attorneys who allegedly worked on the case. Each lists the numbers of hours he or she purportedly worked on specific case-related tasks. Counsel, however, have not provided a *single page* of actual time records. Nor is it obvious that the claimed hours are a compilation of contemporaneous time records; indeed, there is no indication that there are *any* underlying records. Attorney Wolman, in fact, specifically stated that he does not recall "the precise amount of time spent representing

Plaintiffs" but instead attested that the time was "consistent with [his] recollection." (Wolman Aff. at 2).

Not surprisingly, the time increments listed appear to be broad approximations. The affidavits list units of time in gross increments, none of which are broken out by actual day (or even year). Furthermore, nearly all are in full hours, with only occasional half-hour increments. Not a single entry appears to reflect a precise measurement of actual time. Indeed, instead of increments measured in tenths of hours, they are often measured in tens of hours. Thus, to pick a few egregious examples, attorney Judd lists 70 hours for "review file, and organize for trial," 40 hours for "prepare for trial," and 100 hours for "trial." Attorney Warchal lists 30 hours for "meeting with clients," 20 hours for "draft complaint for Gardner" (plus 15 hours more for draft complaints for each of the other three plaintiffs), and 100 hours for "review discovery from defendant." Attorney D'Angelo lists 10 hours for "review [not prepare] complaint Gardner" (and 10 hours more for each of the complaints of the other three plaintiffs), 30 hours for "research diversity issues," and 80 hours for "draft summary judgment motion."

The affidavits also use generic phrases to describe their tasks. Examples include "review complaint," "review discovery," "preparation for trial," "in office meeting to discuss case," and "investigation of claim." Such terms prevent the Court from being able to perform any meaningful assessment of the reasonableness of the time spent. *See Tenn. Gas Pipeline*, 32 F.3d at 634 (upholding district court's reduction of fees by 30% where attorneys charged for "such matters as 'Confer with co-counsel,' 'Confer with client,' 'Review materials,' 'Review documents,' and 'Legal Research' without any indication of the subject matter involved"). Attorney Judd fails even to break down his time into discrete tasks, and instead lumps hours into

categories such as "trial" and "post trial motions"—on which he asserts he spent 100 hours and 72 hours, respectively.

The Court also notes that many of the tasks are merely clerical, and many of those would not reasonably require the amount of time claimed. Again, to pick just a few examples, attorney Warchal charged three hours for "service of complaints," and four hours for "schedul[ing] depositions of plaintiffs." Attorney Wolman charged three hours for "filing and service of complaints." Attorney D'Angelo charged five hours for "packag[ing] complaints for filing with Housing Court," and one hour (twice) for "fil[ing] motion with ECF." While attorneys may be compensated for clerical work, they need not be compensated at an attorney's full rate. *See, e.g.*, *Conservation Law Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 254 (D. Mass. 2011) (discounting by 50% hours spent on clerical tasks); *AutoZone, Inc.*, 2013 WL 1277873, at *8 (same). And, of course, the time requested has to be commensurate with the complexity and difficulty of the task.

In addition, at least some of the entries appear to relate to a different lawsuit. Plaintiffs' counsel have listed fees and costs related to the deposition of Victoria Jackman, which was noticed in a pending state court case. Counsel contends that the deposition was used to impeach Ms. Jackman, who testified at the trial in this matter. They also contend that the subject matter of the pending state case is "factually intertwined" with the present case, and therefore this Court should award fees for that action as well. That state court action, however, is ongoing, and plaintiffs' attorneys can seek fees and costs, if warranted, at the end of that litigation. There is no justification for awarding them now. The court therefore will disallow any fees and costs associated with the deposition of Ms. Jackman.

Furthermore, the time entries, such as they are, appear to be duplicative in multiple respects. Thus, for example, attorney Hashem's affidavit lists fourteen items; the majority of these relate to the deposition of Ms. Jackman, and the remainder are both generically described and appear to be entirely duplicative of the work of other attorneys on the case. While courts recognize the value of collaborative work and the utility of multiple lawyers in litigation, a losing party need not bear the costs of an overstaffed case. *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001) ("[A] court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case."); *United Nuclear Corp. v. Cannon*, 564 F. Supp. 581, 590 (D.R.I. 1983) (courts "must zealously guard against any propensity to over-staff litigation"); *Fryer v. A.S.A.P. Fire & Safety Corp., Inc.*, 750 F. Supp. 2d 331, 337 (D. Mass. 2010) *aff'd*, 658 F.3d 85 (1st Cir. 2011) (stating that the "time of two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted") (internal quotation omitted).

Finally, and as noted, this litigation was not particularly complex. From the time the matter was removed to this Court until the filing of the jury verdict form, there are only 152 entries on the docket. Many of those entries involve the litigation of claims against the insurance defendants, which were not claims under ch. 186, § 14 and which were dismissed in any event. The trial took only five days, including one day for jury empanelment and openings and another day for argument, jury instructions, and deliberation; witness testimony took only three half-days. Only twelve witnesses were called, none of whom were experts. Attorney D'Angelo's closing argument for the plaintiffs was about seven minutes long. It is difficult to fathom how such a case could reasonably consume nearly a million dollars in legal fees.

Counsel's submission of grossly inflated requests, and their failure to submit appropriate documentation, leaves the Court in a difficult position. Certainly the Court could, if it chose, deny the application altogether. *See Grendel's Den*, 749 F.2d at 952. It could also convene a hearing, which would consume additional court resources to resolve an issue that should have been addressed properly in the first instance. Under the circumstances, it appears that the appropriate thing to do is to attempt to ascertain a reasonable amount of fees for the claim under ch. 186, § 14 and deny the application in all other respects. Given the information presented, that is something of an exercise in the abstract, but the Court will endeavor to determine a reasonable estimate. To the extent that those estimates may be unduly conservative, the fault lies with plaintiffs' counsel for submitting inadequate documentation.

The Court will accordingly award fees as follows:

*Stephen D'Angelo*. Attorney D'Angelo was lead counsel, who actually tried the case. The trial of the claim for breach of the implied covenant of quiet enjoyment, including discovery and preparation, and assuming overlap with the trial of related claims (such as negligence), would appear to reasonably require not less than 150 hours of time for lead counsel.

*Jay Wolman*. Attorney Wolman appears to have been an associate for the early phase of the case, including discovery and summary judgment practice. Such work would appear to reasonably require not less than 25 hours of time for associate counsel.

*Amelia-Lyn Warchal*. Attorney Warchal also appears to have been an associate during the early phase of the case, including discovery. Such work would appear to reasonably require not less than 25 hours of time for associate counsel.

*Neil Judd*. Attorney Judd appears to have been the principal associate for the trial phase

of the case. Presumably, he had the most significant role in preparing pre-trial and post-trial motions and other pleadings associated with the trial. Such work would appear to reasonably require not less than 50 hours of time for associate counsel.

*Saba Hashem*. Attorney Hashem appears to be a partner of attorney D'Angelo. She appears to have participated in the proceeding by taking the deposition of Victoria Jackman in the state court case (noted above) and participating in trial "preparation" (although she did not appear in court) and "review" of post-trial motions and memoranda. As noted, the Court sees no reason to allow any of the claimed time as to Ms. Hashem, all of which appears to be duplicative or expended on a different matter.

In sum, the court finds that the permissible requested time for Attorney D'Angelo is 150 hours; for Attorney Wolman is 25 hours; for Attorney Warchal is 25 hours; for Attorney Judd is 50 hours; and for Attorney Hashem is 0 hours.

**B. <u>Hourly Rate</u>**

To establish the hourly fee, plaintiffs have suggested the rates set by the Laffey Matrix, created by the Office of the U.S. Attorney for the District of Columbia based on legal costs in the Washington, D.C. metropolitan area. *See E.E.O.C. v. AutoZone, Inc.*, 2013 WL 1277873, at *11 n.16 (D. Mass. Mar. 29, 2013). However, the appropriate comparison here is to the prevailing rates in Boston, not Washington. *See id.* ("[F]ederal judges in and around Boston have impliedly adopted a narrow view on the scope of the Laffey Matrix's application."). The court must consider, therefore, "the type of work performed, who performed it, the expertise that it required, and when it was undertaken" in order to set a reasonable rate. *Grendel's Den*, 749 F.2d at 950-51.

Plaintiffs' attorneys have not provided information about their experience and qualifications, other than their dates of bar admissions. Nor have they provided the rates that they charged plaintiffs in this case, nor the rates they have charged in other cases. Overall, the litigation was straightforward: it addressed a single event; the legal issues were uncomplicated; and trial was brief. Therefore, the Court, based on its experience, the character and complexity of the case, and on rates recently awarded by local district court judges, deems a reasonable rate to be $250 per hour for partners and $100 for associates. *See, e.g.*, *Aly v. Mohegan Council, Boy Scouts of Am.*, 871 F. Supp. 2d 19, 28 (D. Mass. 2012) (Saylor, J.) (awarding counsel $250 per hour); *Estate of John McIntyre v. United States*, 739 F. Supp. 2d 70, 77 (D. Mass. 2010) (Young, J.) (awarding $300 per hour for partners and $100 for associates).

Based on the allowable hours and the reasonable hourly rate, the Court will grant reasonable attorneys' fees in the total amount of $47,500, calculated as follows:

Attorney D'Angelo: 150 hours x $250 = $37,500;

Attorney Wolman: 25 hours x $100 = $2,500;

Attorney Warchal: 25 hours x $100 = $2,500; and

Attorney Judd: 50 hours x $100 = $5,000.

**C. <u>Costs</u>**

Plaintiffs also submitted a list of its costs during the litigation. These records, unlike its time records, are contemporaneous and detailed. However, the Court, in its discretion, will disallow certain expenses that appear unjustified by the record or improper.

First, on February 7, 2013, plaintiffs charged a U.S. Court of Appeals filing fee. The trial occurred in April 2013 and no appeal was taken by the plaintiffs until September 19, 2013. The

$450 charge is not properly chargeable and will be disallowed.

Second, as described above, costs related to the deposition of Ms. Jackman are not part of this case but instead to the pending state court action. Thus, the $1,105.10 for a court reporter and $55 for a transcript will be disallowed, as will be the flight and hotel charges in the amounts of $265.80, $25, and $489.64.

Finally, plaintiffs' attorneys seek reimbursement for $197 for parking fees, $467.62 for breakfasts and lunches at restaurants near the federal courthouse, and for $1,117.88 for hotel rooms during the trial. Such expenses are not appropriately recoverable, particularly for counsel who practice in North Andover, Massachusetts, and presumably reside in the metropolitan Boston area.

In total, the Court will award costs to plaintiffs in the amount of $8,485.49.

## III. <u>Conclusion</u>

For the foregoing reasons, plaintiffs' motion for attorneys' fees and costs is GRANTED in the amount of $47,500 in fees and $8,485.49 in costs, and otherwise is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: October 18, 2013